

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-3-2009

# Allstate Settlement v. Rapid Settlements

Precedential or Non-Precedential: Precedential

Docket No. 07-3224

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Allstate Settlement v. Rapid Settlements" (2009). *2009 Decisions*. Paper 1632.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1632

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-3224
_____

ALLSTATE SETTLEMENT CORPORATION;
ALLSTATE LIFE INSURANCE COMPANY

v.

RAPID SETTLEMENTS, LTD.; ANDINO WARD

RAPID SETTLEMENTS, LTD.,
Appellant
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 2-06-cv-04989-RK)
District Judge:  Honorable Robert F. Kelly
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 1, 2008

Before:  AMBRO, WEIS and
VAN ANTWERPEN, Circuit Judges.

(Filed: March 3, 2009)

_____

Monica Cavazos-Rosas, Esquire
Susan F. Hatcher, Esquire
Stewart A. Feldman, Esquire
The Feldman Law Firm, LLP
Post Oak Tower, The Galleria
5051 Westheimer Road, Suite 1850
Houston, Texas  77056-5604

*Attorneys for Appellant*

Stephen R. Harris, Esquire
Katherine L. Villanueva, Esquire
Drinker Biddle & Reath LLP
One Logan Square
18th & Cherry Streets
Philadelphia,  PA  19103

*Attorneys for Appellees*

_____

OPINION

_____

WEIS, <u>Circuit Judge</u>.

State legislation requires court approval of the transfer of future periodic payments provided by a structured settlement of a personal injury claim.  In this case, a factoring company

2

sought to evade that requirement by the use of arbitration after a state court refused to approve a lump sum payment in exchange for the rights to future installments. The District Court criticized the factoring company's practices and entered declaratory as well as injunctive relief against it. We will affirm.

I.

The receipt of a large sum of money is not always the blessing the recipient envisioned. Advice as to how to manage newfound wealth is freely given by well-meaning friends, as well as by others whose motives are purely self-serving. Among those who must cope with the various problems of sudden wealth are persons who have settled a personal injury claim and also the few lucky winners of a government-sponsored lottery. In most instances, payments are made in installments rather than in a lump sum.

Seizing what they perceive as a lucrative financial opportunity, a number of factoring companies offer a lump sum in exchange for the rights to some or all future periodic settlement payments. Because of abusive practices employed by some factoring companies, at least forty-three state legislatures have enacted statutes requiring court approval of a transfer of future structured settlement payments. Such legislation is similar to that which requires court approval of a settlement with a minor, see, e.g., Pa. R.C.P. No. 2039(a) ("[n]o action to which a minor is a party shall be compromised, settled or discontinued except after approval by the court"), or the assignment of future prize installment payment rights by the winner of a state lottery.

3

See, e.g., 72 P.S. § 3761-306(a)(3) ("Payment of any prize drawn [in the state lottery] may be made to any person pursuant to a voluntary assignment of the right to receive future prize payments . . . if . . . the court . . . issue[s] an order approving the assignment").

Under Pennsylvania's Structured Settlement Protection Act, 40 P.S. §§ 4001-4009, court approval is required to "transfer . . . structured settlement payment rights." Id. at § 4003. Among the findings that a court is required to make is that "the transfer is in the best interests of the payee or his dependents." Id. at § 4003(a)(3).

This case arises from Rapid Settlements' negotiations with Andino Ward, a Pennsylvania resident.[1] In April 1991, Ward settled a personal injury claim with the City of Philadelphia. Through a qualified assignment, Allstate Settlement Corporation agreed to make periodic payments to Ward. The settlement was funded by the purchase of an annuity issued by Allstate Life Insurance Company.[2] The qualified assignment stated, "This Agreement shall be governed by and interpreted in accordance with the laws of the State of PENNSYLVANIA."

---

[1]Ward is not a party to this appeal.

[2]Throughout this opinion we will refer to Allstate Settlement Corporation and Allstate Life Insurance Company collectively as "Allstate."

4

On August 25, 2004, Rapid Settlements and Ward entered into a "Transfer Agreement" under which he agreed to transfer and assign 192 future monthly payments of $2,032.79 each, subject to an annual increase of three percent, in exchange for a lump sum of $32,500.[3]  The "Preliminary" clause provided that, "This Transfer Agreement is subject to court approval. . . . [Ward] and Rapid Settlements agree to proceed in good faith to obtain court approval of this Transfer Agreement."  The contract included an arbitration clause that provided,

> "Any dispute or disagreement arising under this Agreement of any nature whatsoever including but not limited to those sounding in constitutional, statutory, or common law theories as to the performance of any obligations, the satisfaction of any rights, and/or the enforceability hereof, shall be resolved through demand by any interested party to arbitrate the dispute and shall submit the same to a nationally recognized, neutral, arbitration association for resolution . . . ."

Because Ward had previously assigned certain payment rights he agreed to assign to Rapid Settlements, the parties signed an "Amended Transfer Agreement" on December 3, 2004, which assigned 120 monthly payments of $2,427.26 each, subject to an annual increase of three percent, to Rapid

[3]The effective annual interest rate associated with this agreement was 15.238%.

5

Settlements in exchange for a lump sum of $13,250.00.[4] This second Transfer Agreement was presented to the Court of Common Pleas of Montgomery County, Pennsylvania, pursuant to Pennsylvania's Structured Settlement Protection Act, but the court denied approval.

On March 21, 2005, Rapid Settlements filed a demand for arbitration against Ward alleging, *inter alia,* that Ward had received an advance of $9,937.50 toward the money he was to receive under the second agreement and that he had failed to return the money after the court denied approval of the transfer.

Before the arbitration took place, Ward and Rapid Settlements agreed to a third "Transfer Agreement," dated April 18, 2005. It differed from the second agreement in two material respects. The lump sum was changed to $23,250, instead of the $13,250 in the second agreement. The "Preliminary" clause was revised to read,

> "This Transfer Agreement arises out of the settlement of a breach of contract claim by [Rapid Settlements] against [Ward]. Consummation of this Transfer Agreement is subject to both a favorable arbitrator's award and court confirmation of such. The arbitrator and a court must approve [Ward]'s sale, assignment, and

---

[4]According to Allstate, the discounted present value of the payments Ward assigned to Rapid Settlements in this second agreement was $108,610.90.

transfer to Rapid Settlements of the Assigned Payments before such payments can be transferred and the Assignment Price . . . paid to [Ward]. The Final Order shall state that both the arbitrator and court at least have made all findings required by applicable law, and that [Allstate is] authorized and directed to pay the Assigned Payments to Rapid Settlements, its successors and, or assigns. [Ward] and Rapid Settlements agree to proceed in good faith to obtain the arbitrator's award and court confirmation of such award approving this Transfer Agreement."

On April 23, 2005, after the third agreement was reached, Rapid Settlements notified Allstate of the pending arbitration and that a hearing was scheduled on May 23, 2005, in Houston, Texas.

An arbitrator, Bryan Coleman, entered an award dated May 23, 2005, which stated, "Rapid and Ward are collectively, the 'Parties' or individually, a 'Party.'" The arbitrator found that Rapid Settlements had suffered losses from Ward's breach of the second agreement and that he was unable to return the funds that Rapid Settlements advanced him. The arbitrator also found that, "Ward breached the December 3, 2004 [second] transfer agreement with Rapid . . . [and] [i]n satisfaction [of Ward's breach], the Parties have agreed to complete a transfer pursuant to the [Pennsylvania Structured Settlement Protection] Act under the April 18, 2005 [third] transfer agreement." The arbitrator then found that the third, April 18, 2005, agreement "complies with all statutory requirements of the Act and does

7

not contravene any applicable law . . . or the order of any court or responsible administrative authority." The findings went on to declare that "[t]he transfer is in the best interests of Ward."

The award concluded with the arbitrator's order, which purported to approve "the April 18, 2005 transfer agreement" and ordered Allstate "to deliver and make payable to" Rapid Settlements the payments Ward agreed to assign in the third agreement. The arbitrator further ordered Rapid Settlements to pay Ward the $23,250 lump sum due under the third contract, less the $9,937.50 alleged advance and Ward's $500 share of arbitration fees. Finally, the parties were ordered to notify Allstate of the arbitration award.

A Texas county court confirmed the award in June 2005 and a Notice of Entry of Foreign Judgment was filed in the Court of Common Pleas of Montgomery County.[5]

Allstate refused to comply with the arbitrator's order. Instead, Allstate requested that Pennsylvania court approval be secured for the third agreement and the arbitrator's award. On May 12, 2006, Rapid Settlements and Ward filed a petition in the Court of Common Pleas of Montgomery County for approval of the third transfer agreement.

---

[5]The Texas court judgment was subsequently vacated. Rapid Settlements' appeal of that decision is pending.

8

The Common Pleas Court denied the petition on September 19, 2006, noting that Ward withdrew his request for approval at the hearing.

Rapid Settlements subsequently filed a "renewed demand" in Texas for arbitration against Ward. Allstate notified Rapid Settlements that it was not a party to any arbitration between Ward and Rapid Settlements, did not consent to be bound by, and would not honor, any forthcoming award.

On November 13, 2006, Allstate filed its complaint in this action, seeking declaratory and injunctive relief against Rapid Settlements. Specifically, Allstate sought an injunction and a declaration that it was not bound to honor the agreements between Ward and Rapid Settlements, or any arbitration award, without court approval as contemplated in any applicable state structured settlement protection act.

Two days later, the same arbitrator who had entered the first award against Ward entered an order on Rapid Settlements' "renewed demand." The arbitrator found that Ward breached the third agreement by refusing to cooperate with Rapid Settlements in the second petition to the Pennsylvania court.

Rapid Settlements was awarded $11,000 in damages for the breach. The arbitrator also determined that Ward had previously assigned one of the future payments he had agreed to assign Rapid Settlements in the third agreement. Offsetting the damages, the amount of the previously assigned payment, and the alleged advances received from the $23,250 Ward was due

under the third agreement, the arbitrator found that Ward owed Rapid Settlements $812.28.

The arbitrator also determined that Allstate's interests in the assigned payments "are in the form of a stakeholder" and that it "will bear no relevant or material burden whatsoever" in redirecting the payments to Rapid Settlements because that obligation "already exist[s] under applicable state law and [is] merely ministerial in nature." The arbitrator added, "Whether or not this Arbitrator has jurisdiction over [Allstate] is irrelevant because this proceeding is the equivalent to an 'in rem' action and the Arbitrator has jurisdiction as in an interpleader over the monies due by [Allstate] over which the only issue is to whom [Allstate] will pay same."

In May 2007, the District Court granted summary judgment in favor of Allstate in its suit against Rapid Settlements. The Court ruled that Allstate could not be bound to the arbitration awards. The Court also determined that Rapid Settlements' attempt to use arbitration and court confirmation of the awards to cause a transfer of Ward's interests in the future payments violated Pennsylvania's Structured Settlement Protection Act and that the arbitrator's purported findings with respect to Allstate were *ultra vires*.[6]

---

[6]The District Court specifically stated that the "findings and orders of the arbitrator [with respect to Allstate] are outside his powers." Allstate Settlement Corp. v. Rapid Settlements, Ltd., No. 06-4989, 2007 WL 1377667, at *5 (E.D. Pa. May 8, 2007). The Court could have used the term "*ultra vires*," if it so

10

Allstate was awarded declaratory and injunctive relief.[7] The injunction enjoins Rapid Settlements

desired, to convey the idea that certain acts of the arbitrator were unauthorized. See Black's Law Dictionary 1522 (6th ed. 1990) (defining "*Ultra vires*" as, *inter alia*, "[a]n act performed without authority to act on subject"). The Supreme Court has acknowledged that an arbitrator's *ultra vires* act need not be recognized. See Marine Transit Corp. v. Dreyfus, 284 U.S. 263, 275-76 (1932) ("[w]e do not conceive it to be open to question that, where the court has authority under the statute . . . to make an order for arbitration, the court also has authority to confirm the award or to set it aside for irregularity, fraud, *ultra vires* or other defect").

[7]The declaratory judgment provides that, *inter alia*, (i) the purported assignment between Rapid Settlements and Ward, the arbitration awards, and the Texas judgment are unenforceable against Allstate; (ii) Rapid Settlements must comply with any applicable state structured settlement protection act in connection with any transfer of structured settlement payments involving Allstate; (iii) Allstate is not obligated to make any payments to Rapid Settlements without court approval pursuant to the applicable state structured settlement protection act; and (iv) Allstate is not required to cooperate with Rapid Settlements except as required in a contract with the recipient of structured settlement payments or as required in an applicable state structured settlement protection act.

"from bringing or pursuing any arbitration between itself and any Allstate annuitant, if that arbitration, directly or indirectly, effects a transfer of structured settlement payment rights owed to an Allstate annuitant or if that arbitration compels Allstate to make payments to Rapid with respect to such Allstate annuitants unless the applicable state court has approved the transfer pursuant to the applicable state structured settlement protection act."

## II.

Rapid Settlements argues that Pennsylvania's Structured Settlement Protection Act does not apply because the arbitrator's award did not order a "transfer" as that term is defined in the Act.[8] Rapid Settlements also contends that the Federal Arbitration Act, 9 U.S.C. §§ 1-16, preempts the state statute. Moreover, Rapid Settlements argues that Allstate is bound by the results of the arbitrations because its interests in the proceedings were aligned with Ward and it did not follow the FAA's procedure to challenge the award. Finally, Rapid Settlements contends that the injunctive relief ordered by the District Court was impermissibly broad.

---

[8]The Act defines a "transfer" as "[a]ny direct or indirect sale, assignment, pledge, hypothecation or other form of alienation, redirection or encumbrance made by a payee for consideration." 40 P.S. § 4002.

12

We review an order granting summary judgment *de novo,* applying the same standard the District Court applied. Saldana v. Kmart Corp., 260 F.3d 228, 231 (3d Cir. 2001). We will affirm if, viewing the facts in the light most favorable to the non-movant and drawing all reasonable inferences in its favor, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Id. at 231-32; Fed. R. Civ. P. 56(c).

III.

Rapid Settlements' contention that Allstate is bound to the arbitrator's awards is the crucial issue in this appeal. "Arbitration is fundamentally a creature of contract," Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503, 1512 (3d Cir. 1994), aff'd, 514 U.S. 938 (1995), and an arbitrator's authority is derived from an agreement to arbitrate. Id. Allstate can be subject to the award here only if it can be bound to Ward and Rapid Settlements' commitment to arbitration.

Whether the arbitrator's award binds Allstate is a question that the court must decide. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942-43 (1995) (a disagreement over whether parties agreed to arbitrate a particular dispute is an issue that the court should decide independently unless the parties have agreed to submit the issue to arbitration); see also, Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452 (2003) (plurality opinion) (a question about an arbitration clause's applicability to a dispute is a "gateway matter" reserved for a court, and not an arbitrator, to decide in the absence of "clear and unmistakable" evidence to the contrary

13

(quoting AT&T Technologies, Inc. v. Communication Workers, 475 U.S. 643, 649 (1986))).

We apply state law in making this determination. See First Options, 514 U.S. at 944 ("[w]hen deciding whether the parties agreed to arbitrate a certain matter[,] . . . courts generally . . . apply ordinary state-law principles that govern the formation of contracts"); see also Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005) (courts "refer to principles of applicable state law when determining the existence and scope of an agreement to arbitrate").

Ward and Allstate's relationship with respect to the structured settlement payments arises from the qualified assignment between them, which provides that Pennsylvania law governs its interpretation. "Pennsylvania courts will uphold choice-of-law provisions in contracts to the extent that the transaction bears a reasonable relation to the chosen forum." Gay v. CreditInform, 511 F.3d 369, 390 (3d Cir. 2007) (quoting Churchill Corp. v. Third Century, Inc., 578 A.2d 532, 537 (Pa. Super. Ct. 1990)). The qualified assignment obviously bears a reasonable relation to Pennsylvania because it involved a Pennsylvania resident and the City of Philadelphia. Accordingly, we look to that law to determine whether Ward and Allstate have an identity of interests in the arbitration between Ward and Rapid Settlements.

Allstate was not a party to any agreement between Ward and Rapid Settlements, but we have recognized "five theories for binding nonsignatories to arbitration agreements: (1) incorporation by reference, (2) assumption, (3) agency,

14

(4) veil-piercing/alter ego, and (5) estoppel." Trippe Mfg., 401 F.3d at 532. Rapid Settlements has not demonstrated that any of those concepts are applicable here under Pennsylvania law. The two cases cited for support are inapt. See United States ex rel. Skip Kirchdorfer, Inc. v. M.J. Kelley Corp., 995 F.2d 656 (6th Cir. 1993); Isidor Paiewonsky Assocs. v. Sharp Props., Inc., 998 F.2d 145 (3d Cir. 1993).

Kirchdorfer applied Ohio law and held that because of an "unusually close relationship" between the general contractor and its sureties, they were bound by an arbitrator's finding in favor of a subcontractor. 995 F.2d at 657, 661. In Paiewonsky, an award was issued against a head tenant in an arbitration with the owner of the property. 998 F.2d at 148. We held that the award could be enforced against a subtenant because under Virgin Islands' landlord-tenant law "a subtenant's interest in real property . . . is strictly derivative of that of the head tenant," id. at 154, and therefore the subtenant's interests in the arbitration were "directly related, if not in fact congruent" to the head tenant's. Id. at 155. Ward and Allstate do not share such an identity of interests in the arbitration proceedings here.

Pennsylvania's Structured Settlement Protection Act is a legislative recognition of the disparate interests of the obligor and recipient of settlement payments. The Act provides that "no structured settlement obligor or annuity issuer shall be required to make any payment to any transferee of structured settlement payment rights" without court approval. 40 P.S. § 4003(a).

This restriction protects the oft vulnerable beneficiaries of structured settlements, but also offers some protection to

payment obligors and annuity issuers from the sometimes unscrupulous behavior of factoring companies and recipients. Here, the Act protected Allstate from competing claims for Ward's future installments on the two occasions where he assigned his rights to the same payments to different factors.

Allstate was aptly described by the arbitrator as being akin to a stakeholder. As such, it did not have concerns in common with Ward and Rapid Settlements in the disputes between those two.

We conclude that there is not such an identity of interests between Allstate and Ward in the outcome of the arbitration that justifies binding Allstate to the award. The District Court correctly concluded that the arbitrator lacked the power to issue orders binding Allstate.

Once it is established that Allstate cannot be bound to the arbitration, Rapid Settlements' preemption argument dissipates. Allstate and Rapid Settlements never agreed to arbitrate, either in fact or through operation of law. Here, Pennsylvania law prevents the enforcement of the arbitrator's *ultra vires* findings and orders with respect to Allstate.[9] FAA preemption is not

---

[9]A finding of an arbitrator that does not emanate from an agreement to arbitrate is *ultra vires*. See Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503, 1512 (3d Cir. 1994), aff'd, 514 U.S. 938 (1995) ("arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration" (quoting AT&T

implicated. See Great W. Mortgage Corp. v. Peacock, 110 F.3d 222, 231 (3d Cir. 1997) ("in the absence of a state law which discourages the enforcement of arbitration agreements, no question of preemption . . . is presented"); see also Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989) ("the FAA pre-empts state laws which 'require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration'" (quoting Southland Corp. v. Keating, 465 U.S. 1, 10 (1984))); cf. Perry v. Thomas, 482 U.S. 483, 491 (1987) (a state law "in unmistakable conflict" with the FAA will be preempted).

Accordingly, we will affirm the District Court's order granting summary judgment to Allstate.[10]

---

Technologies, Inc. v. Communication Workers, 475 U.S. 643, 648-49 (1986))).

[10]We need not address Rapid Settlements' argument that Pennsylvania's Structured Settlement Protection Act does not apply to the awards that resulted from its arbitration with Ward. We note, however, that some courts have addressed similar arbitration awards obtained by Rapid Settlements in similar circumstances and found that the awards did constitute "transfers" under similar structured settlement protection acts. See, e.g., Allstate Life Ins. Co. v. Rapid Settlements, Ltd., No. Civ.A.3:06CV00629DPJ, 2007 WL 2745806, at *4 (S.D. Miss. Sept. 20, 2007) (an arbitration award obtained pursuant to the same scheme Rapid Settlements attempted to perpetrate in this case was a "transfer" under Mississippi's Structured Settlement

17

IV.

Rapid Settlements' final contention is that the injunctive relief granted by the District Court was impermissibly broad. The injunction prohibited Rapid Settlements

> "from bringing or pursuing any arbitration between itself and any Allstate annuitant, if that arbitration, directly or indirectly, effects a transfer of structured settlement payment rights owed to an Allstate annuitant or if that arbitration compels Allstate to make payments to Rapid with respect to such Allstate annuitants unless the applicable state court has approved the transfer pursuant to the applicable state structured settlement protection act."

We review the terms of an injunction for abuse of discretion. Gen. Instrument Corp. of Del. v. Nu-Tek Elecs. & Mfg., Inc., 197 F.3d 83, 89 (3d Cir. 1999). An injunction is an

---

Protection Act).

Rapid Settlements also argues that the District Court violated the federal full faith and credit statute, 28 U.S.C. § 1738, when it refused to give the judgment of the Texas court enforcing the first arbitration award the same effect it would receive in Texas. The Texas court has vacated its judgment. Rapid Settlements' full faith and credit argument is therefore moot.

18

equitable remedy which can be granted or withheld at the District Court's discretion and is reviewed with deference. Id. at 90.

The District Court did not abuse its discretion here. We are one of the many courts to face Rapid Settlements' transparent attempts to use this arbitration scheme to evade the legislatures' intentions to protect the recipients of structured settlement payments.[11] Rapid Settlements has pursued many of the same arguments it has presented to this Court in those cases. Moreover, this appeal is not the only instance in which Rapid Settlements has pursued its scheme with an individual who receives structured settlement payments from Allstate. Allstate Life Ins. Co. v. Rapid Settlements, Ltd., No. Civ.A.3:06CV00629DPJ, 2007 WL 2745806 (S.D. Miss. Sept. 20, 2007). Given Rapid Settlements' history of attempting

---

[11]See, e.g., Symetra Life Ins. Co. v. Rapid Settlements, Ltd., No. H-05-3167, 2008 WL 901584 (S.D. Tex. Mar. 31, 2008); Allstate Life, No. CIV.A.3:06CV00629DPJ, 2007 WL 2745806; Fid. & Guar. Life Ins. Co. v. Harrod, No. CCB-05-2732, 2008 WL 2246518 (D. Md. Apr. 15, 2008); R & Q Reinsurance Co. v. Rapid Settlements, Ltd., No. 06-14329-CIV, 2007 WL 2330899 (S.D. Fla. Aug. 13, 2007); Transamerica Occidental Life Ins. Co. v. Rapid Settlements, Ltd., No. 01-07-00137-CV, 2008 WL 5263265 (Tex. App. Dec. 18, 2008); Rapid Settlements, Ltd. v. SSC Settlements, LLC, 251 S.W.3d 129 (Tex. App. 2008); In re Rapid Settlements, Ltd., No. 14-06-00698-CV, 2007 WL 925698 (Tex. App. Mar. 29, 2007); In re Rapid Settlements, Ltd., 202 S.W.3d 456 (Tex. App. 2006).

19

to circumvent state structured settlement protection acts and bind settlement obligors and annuity issuers to arbitrations in which they have not so consented,[12] the District Court was well within its discretion to enjoin Rapid from further use of its scheme to plague Allstate.

V.

Allstate is not subject to the awards issued in the arbitrations between Rapid Settlements and Ward. The relief ordered by the District Court was well within its discretion. Accordingly, we will affirm the order of the District Court.

---

[12]We note another court's factual findings with respect to the arbitration tactics of Rapid Settlements. In Symetra Life, No. H-05-3167, 2008 WL 901584, at *11, the Court found that Rapid Settlements has a practice of entering into proposed transfer agreements with recipients of structured settlement payments that contain the arbitration clause present here. Rapid Settlements files a demand for arbitration when a state court does not approve the proposed transfer agreement. Id. Those arbitrations usually occur in Houston with the same arbitrator presiding at each proceeding. Id. The arbitrator typically issues an identical award in each proceeding, an order purporting to approve the transfer agreement and requiring the annuity issuer to send Rapid Settlements the payments it would have received had the transfer agreement been approved. Id.