**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3460
_____

In re: ROTAVIRUS VACCINES ANTITRUST
LITIGATION

SUGARTOWN PEDIATRICS, LLC;
SCHWARTZ PEDIATRICS SC;
MARGIOTTI & KROLL PEDIATRICS, PC

v.

MERCK SHARP & DOHME CORP.,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-18-cv-01734)
District Judge: Honorable J. Curtis Joyner
_____

Argued on September 24, 2021

Before: CHAGARES, *Chief Judge*, HARDIMAN, and
MATEY, *Circuit Judges*

(Filed: March 21, 2022)

Ashley E. Bass [argued]
Andrew D. Lazerow
Mark W. Mosier
Covington & Burling
850 10th Street, N.W.
One City Center
Washington, DC 20001

Lisa C. Dykstra
Morgan Lewis & Bockius
1701 Market Street
Philadelphia, PA 19103
        *Counsel for Appellant*

Leonardo Chingcuanco
Daniel H. Silverman [argued]
Daniel A. Small
Cohen Milstein
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005

Gary L. Azorsky
Cohen Milstein
1717 Arch Street
3 Logan Square, Suite 3610
Philadelphia, PA 19103

Eric L. Cramer
David A. Langer

Daniel J. Walker
Berger Montague
1818 Market Street
Suite 3600
Philadelphia, PA 19103
        *Counsel for Appellees*

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge.*

This appeal comes to us from an order denying a motion to compel arbitration. Appellant Merck contends the District Court should have compelled Sugartown Pediatrics, Schwartz Pediatrics, and Margiotti & Kroll Pediatrics (the Pediatricians) to arbitrate their claim that Merck's vaccine bundling scheme was anticompetitive. We agree. We will reverse and remand for the District Court to grant Merck's motion to compel arbitration.

I

This case involves two types of contracts. Both are part of Merck's loyalty program, whereby medical practices receive discounts if they buy sufficient vaccine quantities from Merck. The first type of contract is between Merck and Physician Buying Groups (PBGs). These loyalty contracts entitle PBG members to discounts if they buy a large enough percentage of their vaccines from Merck. The loyalty contracts also include an arbitration provision. The second type of

3

contract is between PBGs and medical practices. These membership contracts give medical practices discounts on Merck vaccines for enrolling in PBGs. PBGs thus form the bridge between medical practices and Merck, contracting with both Merck and medical practices. They are middlemen in all but one relevant sense: PBGs never possess the vaccines. Medical practices buy their vaccines directly from Merck, but they receive discounts for belonging to a PBG.

Though they were members of PBGs that contracted with Merck,[1] the Pediatricians never signed contracts containing an arbitration clause. So the Pediatricians filed federal suits alleging Merck's vaccine bundling program was anticompetitive. Merck responded with a motion to compel arbitration based on the arbitration clause contained in its loyalty contracts with the PBGs, which the District Court denied under the summary judgment standard. *In re Rotavirus Vaccines Antitrust Litig.* (*Rotavirus I*), 362 F. Supp. 3d 255, 261, 264–65 (E.D. Pa. 2019). The first time this case came before us, we vacated the order of the District Court, holding that it should have allowed discovery on arbitrability. *In re Rotavirus Vaccines Antitrust Litig.* (*Rotavirus II*), 789 F. App'x 934, 938 (3d Cir. 2019).

After the parties conducted discovery, Merck renewed its motion to compel arbitration and the Pediatricians cross-moved for summary judgment on arbitrability. *In re Rotavirus Vaccines Antitrust Litig.* (*Rotavirus III*), 2020 WL 6828123, at *1 (E.D. Pa. Nov. 20, 2020). The District Court once again

---

[1] Schwartz was a member of Children's Community Physicians Association Purchasing Partners (CCPAPP). Sugartown and Margiotti & Kroll were members of Main Street Vaccines (MSV).

4

denied Merck's motion to compel arbitration and granted summary judgment for the Pediatricians. *Id.* at *15. The Court concluded, as relevant here, that the Pediatricians were not bound under an agency theory because they had not authorized the PBGs to enter into arbitration agreements. *Id.* at *13–14. This appeal followed.

## II

The District Court had jurisdiction over the Pediatricians' antitrust claims. *See* 28 U.S.C. § 1331; 15 U.S.C. § 4. We have jurisdiction to review the order denying a motion to compel arbitration under 9 U.S.C. § 16(a)(1)(B). For jurisdictional purposes, motions to compel arbitration and motions for summary judgment on arbitrability—both of which are at issue in this appeal—are equivalent. *See Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 598–99 & n.4 (3d Cir. 2020).

Our review of the District Court's decision, including its legal conclusion that the PBGs were not the Pediatricians' agents, is plenary. *O'Hanlon v. Uber Techs., Inc.*, 990 F.3d 757, 766 n.5 (3d Cir. 2021). We apply the summary judgment standard, so "[t]he party opposing arbitration is given the benefit of all reasonable doubts and inferences that may arise." *Griswold v. Coventry First LLC*, 762 F.3d 264, 270 (3d Cir. 2014) (quoting *Kaneff v. Del. Title Loans, Inc.*, 587 F.3d 616, 620 (3d Cir. 2009)). No material facts are in dispute.

## III

The Federal Arbitration Act (FAA) "'declare[s] a national policy favoring arbitration' of claims that parties contract to settle in that manner." *Preston v. Ferrer*, 552 U.S.

346, 353 (2008) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984)). But courts must be sure that the parties have agreed to arbitrate their claims. After all, "[a]rbitration is strictly a matter of consent." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019) (quoting *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 299 (2010)).

Nonsignatories will be bound to an arbitration agreement only when "traditional principles of contract and agency law" so require. *Hamilton Park Health Care Ctr. Ltd. v. 1199 SEIU United Healthcare Workers E.*, 817 F.3d 857, 864 (3d Cir. 2016) (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 194 (3d Cir. 2001)). Pennsylvania contract law recognizes "five theories for binding nonsignatories to arbitration agreements," including agency. *Allstate Settlement Corp. v. Rapid Settlements, Ltd.*, 559 F.3d 164, 170 (3d Cir. 2009) (quoting *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005)). A principal will be bound by his agent's acts—including an agreement to arbitrate—if the agent has actual or apparent authority. *Wisler v. Manor Care of Lancaster PA, LLC*, 124 A.3d 317, 323 (Pa. Super. Ct. 2015).

A

Merck argues that the Pediatricians granted the PBGs actual authority to consent to the arbitration clauses on the Pediatricians' behalf. We agree, at least as to Schwartz Pediatrics.

Under Pennsylvania law, "the three basic elements of agency are: [1] the manifestation by the principal that the agent shall act for him, [2] the agent's acceptance of the undertaking[,] and [3] the understanding of the parties that the

6

principal is to be in control of the undertaking." *Commonwealth v. Britton*, 229 A.3d 590, 598 (Pa. 2020) (quoting *Basile v. H & R Block, Inc.*, 761 A.2d 1115, 1120 (Pa. 2000)).

Schwartz's contract with its PBG satisfies the first two prongs of this test. Its 2016 PBG membership contract made the PBG Schwartz's "non-exclusive agent to arrange for the purchase of goods and services," *Rotavirus III*, 2020 WL 6828123, at *9; and a previous version of the membership agreement, effective in 1999, contained a similarly explicit provision, *see* App. 2412 ("Each Limited Partner hereby appoints the Partnership as its agent for the purpose of negotiating and entering into Vendor Arrangements, and the Partnership hereby accepts such appointment."). By agreeing to these terms, Schwartz manifested an intent to have the PBG act for it, and the PBG accepted that responsibility. The PBG acted on this authority in 2012 by executing the loyalty contract with Merck that included the arbitration clause. Thus, the first two elements of the agency test are satisfied here for Schwartz.

Accordingly, the only remaining question is whether Schwartz exercised sufficient control over its PBG to meet the control requirement of the Pennsylvania agency test. *See Britton*, 229 A.3d at 598.

1

Although the parties dispute how it applies here, Pennsylvania agency law is clear on the control requirement. "[A]n agency relationship is established only when the principal exercises control over the action at hand." *Id.*; *see also Menichini v. Grant*, 995 F.2d 1224, 1233 n.14 (3d Cir.

7

1993). The principal can control the agent by "prescribing what the agent shall or shall not do before the agent acts," or by directly controlling the agent during performance. *Smalich v. Westfall*, 269 A.2d 476, 480–81 (Pa. 1970) (quoting Restatement (Second) of Agency § 14 cmt. a (Am. L. Inst. 1958)). The question in this appeal is whether Schwartz—the alleged principal—had the right or ability to control its PBG, the alleged agent. *See Commonwealth v. Minds Coal Mining Corp.*, 60 A.2d 14, 20 (Pa. 1948) ("[C]ontrol over the means of performance is not the test of agency.").

Here, Schwartz exercised control over its PBG by circumscribing the PBG's authority. Schwartz made the PBG its agent only for the limited purpose of vaccine purchases. *Rotavirus III*, 2020 WL 6828123, at *9 (2016 CCPAPP membership contract, limiting agency to "the purchase of goods and services as set forth herein"); App. 2412 (1999 membership contract "appoint[ing] the [PBG] as [Schwartz's] agent for the purpose of negotiating and entering into Vendor Arrangements"). Thus, Schwartz simultaneously demonstrated its intent to create an agency relationship and exercised control over the scope of the PBG's agency by contract.

The Pediatricians counter that this case is like *Basile*, where the Pennsylvania Supreme Court held that no agency relationship exists where the alleged agent merely presents an opportunity to the alleged principal. *Basile*, 761 A.2d at 1121. In *Basile*, H & R Block offered its customers the opportunity to obtain loans from a third party. *Id.* at 1117. The court held that H & R Block's "mere facilitation" of the loan did not create an agency relationship. *Id.* at 1121. "Rather, the action [giving rise to the agency relationship] must be a matter of consequence or trust, such as the ability to actually bind the principal or alter the principal's legal relations." *Id.* (emphasis

8

omitted). Because such action was lacking, there was no agency relationship.

The Pediatricians' reliance on *Basile* is inapt. In that case, the customers did not contractually designate H & R Block as their agent. So the court looked to the parties' conduct to determine whether an agency relationship existed. In doing so, the *Basile* court distinguished "mere facilitation" of an opportunity from an agency relationship. *Id.* Unlike in *Basile*, here Schwartz signed a membership contract that expressly designated the PBG as its purchasing agent. Because of the explicit authority delegated by that contract, Merck need not rely on the relationship between the parties to establish an agency relationship.

2

The Pediatricians also argue that the PBGs were not acting as their agents because they did not notify the Pediatricians about the arbitration clauses. The Pediatricians claim that the PBGs had no authority to agree to "undisclosed terms" with Merck. This argument also rests on a flawed analogy to *Basile*.

To exercise the requisite degree of control, the principal must be adequately informed of the agent's actions. Accordingly, the agent has a fiduciary duty to keep the principal informed of "all relevant information." *Id.* at 1120. Because of the agent's duty to disclose, the agent's knowledge is imputed to the principal. *W.C.A.B. v. Evening Bulletin*, 445 A.2d 1190, 1192 (Pa. 1982); *see also* Restatement (Third) of Agency § 5.03 (Am. L. Inst. 2006) ("[N]otice of a fact that an agent knows or has reason to know is imputed to the principal

9

if knowledge of the fact is material to the agent's duties to the principal.").

But what if the agent does not fulfill its fiduciary duties? An agency relationship still exists even if the agent fails to notify the principal of all relevant information. *See* Restatement (Third) of Agency § 5.03 cmt. b (Am. L. Inst. 2006) ("A principal may not rebut the imputation of an agent's notice of a fact by establishing that the agent kept silent."). Put more simply, an agent might fail to perform his duty but remain the principal's agent. In such a case, the proper recourse for the principal is an action against the agent for breach of fiduciary duty or malpractice; but the principal will nevertheless be bound by the agent's actions. *See, e.g.*, *Patel v. Mericle Com. Real Est. Grp.*, 2017 WL 11144107, at *4 (M.D. Pa. 2017) (allowing malpractice and breach of fiduciary duty claims against an agent to proceed based on the agent's failure to disclose material information).

Here, the Pediatricians claim ignorance of the arbitration clause. Based on that fact, the District Court concluded that the Pediatricians were not bound by the arbitration clause because the PBGs were not acting within the scope of their agency authority when they agreed to the arbitration clauses. *Rotavirus III*, 2020 WL 6828123, at *14 ("[W]e are constrained to conclude that the member practices[] granted only very limited authority to their PBGs to enter into those terms and conditions of the Merck contracts which had been communicated to them.").

The District Court's conclusion does not follow from its premise. The Pediatricians' lack of notice is relevant to the *adequacy* of the PBGs' performance as agents, but it does not answer the antecedent question of whether an agency

10

relationship existed. *See* Restatement (Third) of Agency § 5.03 cmt. b (Am. L. Inst. 2006). Unlike in *Basile*, where there was no contract conferring agency on H & R Block, the contracts between the PBGs and the Pediatricians clearly established the agency relationship, and the authority to agree to an arbitration clause is part and parcel of the agency relationship in commercial contexts. *See Dye v. Tamko Bldg. Prods., Inc.*, 908 F.3d 675, 684–86 (11th Cir. 2018); *see also HealthplanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 335 (W.D. Pa. 2020) (noting that *Dye* "provides persuasive guidance consistent with Pennsylvania law"). Subsequent actions, such as the PBGs' alleged failure to notify, go only to whether the PBGs fulfilled their fiduciary duties. Even if the PBGs breached their duties to the Pediatricians, that does not release the Pediatricians from their obligations under the arbitration clause. If this case were more like *Basile*, and there was no explicit contract conferring agency on the PBGs, then the Pediatricians would be correct— we would look to the parties' conduct to determine the existence and scope of their agency relationship. But here, a written contract created an agency relationship that included the implied authority to accept an arbitration provision.

For these reasons, Schwartz Pediatrics is bound to arbitrate because it granted actual authority to its PBG.

B

Sugartown and Margiotti & Kroll's contract with their PBG would have established actual authority had it been signed earlier. That contract authorized the PBG to "act as a purchasing agent for [PBG members] to enter into contracts with third-party vendors to furnish goods or services to [PBG members]." *Rotavirus III*, 2020 WL 6828123, at *11. But that language was not inserted into the membership contract until

11

2019, years after the PBG executed its 2012 loyalty contract with Merck. The earlier contracts between the two Pediatricians and their PBG were less explicit about the PBG's agency but still contained provisions from which agency could be inferred. *See* App. 2347 (stating that the Pediatricians "accept[] the conditions and terms offered in the [PBG-Merck] contract" and wish to "participate"); *see also* App. 2224–25 (testimony by MSV president that MSV acts as members' "limited agent" and has "always negotiated the contracts on behalf of [its] members"). In any event, we need not decide whether those earlier contracts sufficed to establish actual agency authority because, at a minimum, the PBG had apparent authority to act for Sugartown and Margiotti & Kroll.

An agent has apparent authority if "the principal, by word or conduct, causes people with whom the alleged agent deals to believe that the principal has granted the agent authority to act." *Wisler*, 124 A.3d at 324 (quoting *Walton v. Johnson*, 66 A.3d 782, 786 (Pa. Super. Ct. 2013)). In Pennsylvania, "apparent authority [may] be established with a showing of: (1) limited authority given to the agent by the principal; and (2) conduct of the agent which demonstrates to the third-party the agent's apparent authority to bind the principal." *Leidigh v. Reading Plaza Gen., Inc.*, 636 A.2d 666, 667–68 (Pa. Super. Ct. 1994) (citation omitted).

Both prongs of the test for apparent authority are met here. The District Court found "the member practices[] granted only very limited authority to their PBGs." *Rotavirus III*, 2020 WL 6828123, at *14. Testimony in the District Court confirmed that Sugartown and Margiotti & Kroll's PBG acted on their behalf. *See, e.g.*, *id.* at *9 (describing testimony by MSV's president that "if a practice was enrolling in the [MSV] program through completion of their Enrollment

Form/Membership Agreement, they were also enrolling into the contract which [MSV] had with Merck and agreeing that they would abide by the terms and conditions of this contract"); App. 2224–25 (testimony by MSV's president that MSV acts as members' "limited agent" and has "always negotiated the contracts on behalf of [its] members"). At a minimum, this testimony justified the District Court's finding that the Pediatricians delegated "very limited authority" to their PBGs. *Rotavirus III*, 2020 WL 6828123, at \*14.

So we turn to the second prong of the test: the conduct of the agent. Pennsylvania law tilts in favor of finding that an agent has apparent authority. Third parties dealing with an agent need only exercise "reasonable diligence to ascertain the agent's authority." *Bolus v. United Penn Bank*, 525 A.2d 1215, 1222 (Pa. Super. Ct. 1987). Moreover, "[a]n admitted agent is presumed to be acting within the scope of his authority where the act is legal and the third party has no notice of the limitations on the agent's authority." *Id.* at 1222.

Here, Merck was justified in believing that the PBGs were the Pediatricians' agents because the PBGs represented themselves as agents in their contracts with Merck. App. 2141 (Merck-CCPAPP contract, warranting that CCPAPP had "the authority of the [Pediatricians] to participate in this Agreement"); App. 2157 (Merck-MSV contract with identical language). Additionally, the Merck-PBG contracts required each PBG to meet the federal definition of a "group purchasing organization." App. 2145 (Merck-CCPAPP contract); App. 2161 (Merck-MSV contract). "Group purchasing organization" is defined by federal regulation as "an entity authorized to act as a purchasing agent" for medical providers. 42 C.F.R. § 1001.952(j)(2). By purchasing vaccines at the rates specified in the Merck-PBG contracts, the Pediatricians

13

confirmed the impression that the PBGs were acting as their agents. Thus, Merck had reason to believe the PBGs were the Pediatricians' agents.

The Pediatricians' best argument to the contrary is based on a supposed concession by Merck. Merck represented to the District Court that, until the Pediatricians submitted their contracts with the PBGs, "Merck did not have sufficient information about the nature of the relationship between the PBGs and their members to assert that the PBGs acted as agents for the members with respect to Merck's contracts." App. 124 n.6. Such a concession would defeat an apparent authority theory because Merck could not have believed the PBGs were the Pediatricians' agents if Merck did not know about the "nature of the relationship between the PBGs and [the Pediatricians]." *Id.*

Merck claims this footnote did not concede anything substantive; it merely recognized a procedural hurdle. Specifically, Merck explains it could not prove an agency relationship based solely on the Pediatricians' complaint and needed the Pediatricians to incorporate the agreements into the complaint, which they eventually did. Merck's explanation is plausible since the Pediatricians' complaint devotes only a few paragraphs to their relationship with their PBGs. However, Merck's District Court briefing states that "Merck did not have sufficient information," not just that the Pediatricians' complaint lacked sufficient information. *Id.* So even if we do not fully accept Merck's explanation, Merck knew something about the "nature" of the PBG-Pediatrician relationship because of (1) the PBGs' contractual representations that they were the Pediatricians' agents and (2) the Pediatricians' subsequent purchases of discounted vaccines. That gave Merck sufficient reason to believe that the PBGs were the

14

Pediatricians' agents, even if it never saw the PBG-Pediatrician contracts before this litigation.

Because both prongs of the apparent authority test are satisfied here, Sugartown and Margiotti & Kroll must arbitrate their disputes with Merck.

C

In a final attempt to avoid arbitration, the Pediatricians argue that the arbitration clause's language does not encompass them or their claims. The clause reads: "Any controversy, claim or dispute arising out of or relating to the performance, construction, interpretation or enforcement of this Agreement shall, if not resolved through negotiations between the parties, be submitted to mandatory binding arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. Sec. 1, et. seq." *Rotavirus III*, 2020 WL 6828123, at *2.

1

The Pediatricians insist their antitrust claims against Merck do not "arise out of or relate to" the contracts between Merck and the PBGs. Ped. Br. 25–26. Pennsylvania law suggests otherwise. When confronted with an arbitration clause nearly identical to this one—with the same "arising out of or relating to" language—the Pennsylvania Supreme Court concluded that it was framed in the "broadest conceivable language," and inferred "that the parties intended the scope of the submission to be unlimited." *Borough of Ambridge Water Auth. v. Columbia*, 328 A.2d 498, 501 (Pa. 1974); *see also Battaglia v. McKendry*, 233 F.3d 720, 727 (3d Cir. 2000) ("[W]hen phrases such as 'arising under' and 'arising out of'

15

appear in arbitration provisions, they are normally given broad construction.").

The Pediatricians rely on a case where a more limited arbitration clause was at issue. *See CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 173–74 (3d Cir. 2014) ("[O]nly those disputes '*regarding the performance or interpretation of the Agreement*' must be arbitrated." (emphasis added)). In *CardioNet*, we held that the arbitration agreement did not cover the plaintiffs' claims. *Id.* at 179. But in doing so, we distinguished a case where an "undisputedly broader" arbitration clause was at issue. *Id.* at 176 (citing *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642–43 (7th Cir. 1993)). That broader clause required arbitration for disputes "arising out of" the contract—the same language contained in the arbitration clause at issue here. *Sweet Dreams*, 1 F.3d at 642. So *CardioNet* undermines the Pediatricians' arguments.

For these reasons, we hold that the Pediatricians' antitrust claims are covered by the arbitration clause.

2

The Pediatricians also claim they are not "parties" within the meaning of the contractual language. We disagree. First, it is not clear that the scope of the arbitration provision is limited to the "parties." The portion of the clause which mentions "the parties" applies only to pre-arbitration negotiations: "Any controversy . . . arising out of or relating to . . . this Agreement shall, *if not resolved through negotiations between the parties* [be arbitrated]." *Rotavirus III*, 2020 WL 6828123, at *2 (emphasis added). The operative provision of the arbitration clause, on the other hand, is not limited to "the

16

parties." *See id.* (requiring arbitration of "[a]ny controversy, claim or dispute arising out of or relating to [the contract]").

And even if the Pediatricians were right that the arbitration provision is limited to "the parties," they would still be covered under agency principles. The PBGs were acting as their agents, who stand "in the shoes" of their principals, including when they "alter the legal relations between the principal and third persons." *Tribune-Review Publ'g Co. v. Westmoreland Cnty. Hous. Auth.*, 833 A.2d 112, 120 (Pa. 2003) (cleaned up). When the PBGs signed the agreement in their capacity as agents, they bound the Pediatricians.

For these two independently sufficient reasons, we hold that the Pediatricians are covered by the arbitration provision.

\* \* \*

The District Court erred when it denied Merck's motion to compel arbitration. Schwartz Pediatrics made the PBG its agent by contract, then the PBG used its authority to bind Schwartz to an arbitration clause. Sugartown and Margiotti & Kroll must arbitrate because their PBG had apparent authority to bind them to the arbitration clause with Merck. We will reverse the order of the District Court and remand with the instruction that the Court grant Merck's motion to compel arbitration.

17