OPINION OF THE COURT
FUENTES, Circuit Judge,
with whom McKEE, Chief Judge, and SLOVITER, SCIRICA, SMITH, and JORDAN, Circuit Judges, join.
This case focuses on the proper boundaries between the decision-making responsibilities of courts and arbitrators. Appellants Francis and Trish Puleo (“the Púleos”) brought suit challenging retroactive interest-rate increases on the account balances of their Chase Bank credit cards. Although the Chase Bank Card-member Agreement governing their credit cards contains an Arbitration Agreement expressly barring class actions, the Púleos brought their suit in a representative capacity, arguing that the class action waiver was unconscionable. After Chase moved to compel arbitration, the Púleos urged the District Court to order the parties to arbitrate their class claims, notwithstanding the Arbitration Agreement’s ban on class actions, but argued that the question of whether the class action waiver was unconscionable was a question for the arbitrator, not the court. The District Court rejected their arguments, concluding, first, that the Púleos’ challenge to the enforceability of the class action waiver was a question of arbitrability for the court to decide, and, second, that the entirety of the Arbitration Agreement was enforceable.
In this appeal, the Púleos challenge only the first of these conclusions. They argue that the District Court never should have addressed the unconscionability of the class action waiver and instead should have left that issue to be decided by an arbitrator. Appellee Chase Bank takes the contrary position, arguing that it was proper for the District Court to assess the unconscionability of the class action ban because the Púleos’ unconscionability challenge to the class action waiver presented a question of arbitrability for the court to decide. For the reasons that follow, we hold that the District Court properly exercised its responsibility to decide issues of arbitrability and we thus will affirm.
I.
A.
The facts in this case are straightforward and uncontested. The Púleos use credit cards issued by Chase Bank. They argue that Chase Bank improperly increased the interest rates on their account balances, and did so retroactively. Specifically, Francis Puleo claims that in March 2006, Chase retroactively increased his interest rate from 4.99% to 29.99%, causing him to incur $267 in increased finance charges. Trish Puleo claims that in November 2005, Chase retroactively increased her interest rate from 14.74% to 25.99%, causing her to incur $162 in increased finance charges. Trish Puleo also claims that similar increases were imposed in January 2006 and January 2007, causing her to incur increased finance charges of $263 and $341, respectively.
Chase argues that such increases are permitted by the Púleos’ Chase Bank *176 Cardmember Agreements, as well as by state and federal law. The lawfulness of the retroactive interest rate increase, however, is not at issue in this appeal. Rather, this appeal focuses on the forum in which the enforceability of the class action waiver will be determined, not the substance of the Púleos’ challenge to the retroactive interest rate increases.
B.
The Chase Bank Cardmember Agreement addresses a wide range of issues relative to the relationship between a bank and its credit card holders. Included in this Cardmember Agreement is a sweeping “Arbitration Agreement” that states in block lettering that “ARBITRATION REPLACES THE RIGHT TO GO TO COURT.” (App.62.) In particular, the Arbitration Agreement provides:
Either you or we may, without the other’s consent, elect mandatory binding arbitration of any claim, dispute or controversy by either you or us against the other ... arising from or relating in any way to the Cardmember Agreement.... This Arbitration Agreement governs all Claims, whether such Claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional pi'ovision, or any legal theory of law such as respondeat superior, or any other legal or equitable ground and whether such Claims seek as remedies money damages, penalties, injunctions, or declaratory or equitable relief. Claims subject to the Arbitration Agreement include claims regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember agreement or any prior Cardmember agreement.
(Id. at 63.) The Arbitration Agreement also expressly bars class actions, whether as part of litigation or arbitration:
YOU WILL NOT BE ABLE TO BRING A CLASS ACTION OR OTHER REPRESENTATIVE ACTION IN COURT ..., NOR WILL YOU BE ABLE TO BRING ANY CLAIM IN ARBITRATION AS A CLASS ACTION OR OTHER REPRESENTATIVE ACTION. YOU WILL NOT BE ABLE TO BE PART OF ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE, OR BE REPRESENTED IN A CLASS ACTION OR OTHER REPRESENTATIVE ACTION.
Neither you nor we agree to any arbitration on a class or representative basis, and the arbitrator shall have no authority to proceed on such basis. This means that even if a class action lawsuit or other representative action, such as that in the form of a private attorney general action, is filed, any Claim between us related to the issues raised in such lawsuits will be subject to an individual arbitration claim if either you or we so elect.
(Id. at 62-63.) Finally, the Arbitration Agreement features a severability clause, which states that “if any portion of this Arbitration Agreement is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force.” (Id. at 63.)
Despite the express ban on class actions, the Púleos initially brought this case as a putative class action in Pennsylvania state court on behalf of themselves and other similarly situated Chase credit card holders in Pennsylvania.[1] Chase removed the *177 case to federal court on grounds of diversity. Once in federal court, Chase filed a “Motion to Compel Arbitration and Dismiss the Action,” in which it sought a court order directing the Púleos “to submit their individual disputes to arbitration in accordance with their agreement with Defendant.” (Id. at 43.) The Púleos opposed Chase’s motion in part. They argued that, instead of enforcing the Arbitration Agreement in accordance with its express terms, the District Court should compel the parties to submit their class claims to arbitration in order for the arbitrator to determine whether or not the class action waiver was unconscionable and, therefore, unenforceable.
The District Court granted Chase’s motion in its entirety. In its ruling, the Court compelled arbitration but held that the validity of the class action waiver was a ‘“gateway dispute’” and a “‘question of arbitrability’ for a court to decide.”[2] (Id. at 3 (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (additional citations omitted).) The Púleos filed this timely appeal. After the ease had been argued before a panel of the Court, we elected sua sponte to rehear the matter en banc.
II.
We have jurisdiction over this appeal pursuant to 9 U.S.C. § 16(a)(3) and 28 U.S.C. § 1291. We exercise plenary review over questions regarding the validity and enforceability of an agreement to arbitrate. See Edwards v. HOVENSA, LLC, 497 F.3d 355, 357 (3d Cir.2007) (citing Lloyd v. HOVENSA, LLC, 369 F.3d 263, 273 (3d Cir.2004)).
III.
A.
Congress enacted the Federal Arbitration Act (“FAA”) “to reverse the longstanding judicial hostility to arbitration agreements ... and to place arbitration agreements upon the same footing as oth *178 er contracts.” Spinetti v. Serv. Corp. Intern., 324 F.3d 212, 218 (3d Cir.2003) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)). The FAA ensures that arbitration agreements “are enforceable to the same extent as other contracts” by establishing “a strong federal policy in favor of the resolution of disputes through arbitration.” Alexander v. Anthony Int’l, L.P., 341 F.3d 256, 263 (3d Cir.2003) (quotation marks and citations omitted). To this end, the FAA provides that arbitration agreements are “valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract,” 9 U.S.C. § 2, and it entitles any “party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration” to obtain a “[court] order directing that such arbitration proceed in the manner provided for in such agreement.” 9 U.S.C. § 4; see also Parilla v. IAP Worldwide Servs., VI, Inc., 368 F.3d 269, 275-76 (3d Cir.2004).
Although the Supreme Court has continuously reinforced the “liberal federal policy favoring arbitration agreements,” Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), it has at the same time recognized that courts applying the FAA have a limited but important threshold role to play when a litigant moves to compel arbitration. In particular, the Court has held that “[t]he question whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.” Howsam, 537 U.S. at 83, 123 S.Ct. 588 (quoting AT & T Techs., Inc. v. Commc’ns Workers of America, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)) (alteration in original, internal quotations removed); see also First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943-44, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).
The types of issues that present questions of arbitrability are, as the Supreme Court has explained, limited. In Howsam, the Court noted that,
[l]inguistically speaking, one might call any potentially dispositive gateway question a “question of arbitrability,” for its answer will determine whether the underlying controversy will proceed to arbitration on the merits. The Court’s case law, however, makes clear that, for purposes of applying the interpretive rule, the phrase “question of arbitrability” has a far more limited scope.
537 U.S. at 83, 123 S.Ct. 588.
Specifically, as the Supreme Court discussed in Howsam and elaborated in Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003), a question of arbitrability arises only in two circumstances — first, when there is a threshold dispute over “whether the parties have a valid arbitration agreement at all,” and, second, when the parties are in dispute as to “whether a concededly binding arbitration clause applies to a certain type of controversy.” Bazzle, 539 U.S. at 452, 123 S.Ct. 2402; see also Howsam, 537 U.S. at 84, 123 S.Ct. 588; Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir.2005); cf. Certain Underwriters at Lloyd’s London v. Westchester Fire Ins. Co., 489 F.3d 580, 585 (3d Cir.2007) (“[0]nly when there is a question regarding whether the parties should be arbitrating at all is a question of arbitrability raised for the court to resolve.”) (internal quotation marks and citation omitted). Such questions of arbitrability are presumptively committed to the court unless the parties have “clearly and unmistakably” agreed that the arbitrator should *179 decide the issue of arbitrability. AT & T Techs., 475 U.S. at 649, 106 S.Ct. 1415; see also First Options, 514 U.S. at 944, 115 S.Ct. 1920.
The Supreme Court has contrasted questions of arbitrability with disputes over arbitration procedure, which do not bear upon the validity of an agreement to arbitrate. “[Procedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide,” as are “allegation^] of waiver, delay, or a like defense to arbitrability.” Howsam, 537 U.S. at 84, 123 S.Ct. 588 (citations omitted). Likewise, the Supreme Court has made clear that questions of “contract interpretation” aimed at discerning whether a particular procedural mechanism is authorized by a given arbitration agreement are matters for the arbitrator to decide. Bazzle, 539 U.S. at 453, 123 S.Ct. 2402; see also PacifiCare Health Sys., Inc. v. Book, 538 U.S. 401, 407, 123 S.Ct. 1531, 155 L.Ed.2d 578 (2003) (where an arbitration agreement is ambiguous, “the antecedent question of how the ambiguity is to be resolved” is one for the arbitrator); Certain Underwriters, 489 F.3d at 587-88 (whether an arbitration agreement foreclosed consolidated arbitration is a question of contract interpretation for the arbitrator).
Hence, in Howsani, the Court concluded that the parties’ dispute over whether the plaintiff had commenced the proceedings within the National Association of Securities Dealers’ six-year filing period was a matter for the arbitrator, not the court, to decide. 537 U.S. at 83-84, 123 S.Ct. 588. The Court likened the issue to matters like “waiver, delay, or a like defense,” which are presumptively for the arbitrator, explaining that the issue was an “aspee[t] of the [controversy] which called the grievance procedures into play.” Id. at 85, 123 S.Ct. 588 (citations omitted). And in PacifiCare, where the parties’ contracts were ambiguous as to whether an arbitrator would be authorized to award treble damages on the claims that the plaintiffs brought pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq., the Court held that it fell to the arbitrator, not the court, to resolve the contractual ambiguity. 538 U.S. at 407, 123 S.Ct. 1531.
In stark contrast with the question of arbitration procedure at issue in Howsam and the question of contractual interpretation discussed in PacifiCare, when a party challenges the validity of an arbitration agreement by contending that one or more of its terms is unconscionable under generally applicable state contract law, a question of arbitrability is presented.[3] See Doctor’s Assocs., Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (“[G]enerally applicable contract defenses, such as ... unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA].”) (emphasis added); see also Homa v. Am. Express Co., 558 F.3d 225, 226 (3d Cir.2009) (same); cf. Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 *180 (2000) (addressing the burden of “a party [who] seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive”).
The Courts of Appeals are unanimous in recognizing that an unconscionability challenge to the provisions of an arbitration agreement is a question of arbitrability that is presumptively for the court, not the arbitrator, to decide.[4] See Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 121 (2d Cir.2010) (“[I]t is clear that questions of contractual validity relating to the unconscionability of [an] arbitration agreement must be resolved first, as a matter of state law, before compelling arbitration pursuant to the FAA.”) (citation omitted); Cicle v. Chase Bank USA, 583 F.3d 549, 554 (8th Cir.2009); Dale v. Comcast Corp., 498 F.3d 1216, 1219 (11th Cir.2007); Seawright v. Am. Gen. Fin. Servs., Inc., 507 F.3d 967, 975-77 (6th Cir.2007); Kristian v. Comcast Corp., 446 F.3d 25, 52-53 (1st Cir.2006); Parilla, 368 F.3d at 276; Spahr v. Secco, 330 F.3d 1266, 1270-71 (10th Cir.2003); Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1170 (9th Cir.2003); Snowden v. CheckPoint Check Cashing, 290 F.3d 631, 638 (4th Cir.2002); We Care Hair Dev., Inc. v. Engen, 180 F.3d 838, 842-43 (7th Cir.1999); Webb v. Investacorp, Inc., 89 F.3d 252, 259 (5th Cir.1996). The logic underpinning this consensus is readily apparent — an unconscionability challenge to an arbitration agreement presents a question of arbitrability because such a challenge calls the “validity]” of the arbitration agreement itself into question. Bazzle, 539 U.S. at 452, 123 S.Ct. 2402.
It is against this backdrop that we review the Púleos’ contention that the District Court impermissibly intruded upon the province of the arbitrator when it addressed their argument that the Arbitration Agreement’s class action waiver is unconscionable..
B.
As our discussion thus far makes plain, under the law of this Circuit and others, the well-settled general rule is that when a contractual party challenges the validity of an arbitration agreement by contending that one or more of its terms is unconscionable and unenforceable, a question of arbitrability is presented. As Chase correctly argues, we have consistently employed this approach, holding that a party’s unconscionability challenge to the enforcement of one or more terms of an arbitration agreement presents a gateway matter for judicial determination. See, e.g., Parilla, 368 F.3d at 276 (“Applying the relevant state contract law, a court may ... hold that an agreement to arbitrate is unenforceable based on a generally applicable contractual defense, such *181 as unconscionability.”) (emphasis added, quotation marks and citations omitted); Alexander, 341 F.3d at 264; Spinetti, 324 F.3d at 214.
In the Púleos’ argument that this general rule should not apply to their case, we discern four principal contentions. The Púleos argue: (1) that because they are “willing” to arbitrate (albeit not under the express terms of their Arbitration Agreement), no question of arbitrability is presented here; (2) that under the Supreme Court’s decision in Green Tree v. Bazzle, the arbitrator should determine whether an otherwise binding arbitration agreement bars class actions; (3) that because the parties’ Arbitration Agreement contains a severability clause, the District Court erred in considering the unconscionability of any of its terms; and (4) that, even if their challenge to the class action waiver raised a question of arbitrability, the Arbitration Agreement demonstrates that the parties clearly and unmistakably intended to arbitrate questions of arbitrability. We are not persuaded by any of these arguments, which we address in turn below.
1.
The Púleos’ first contention as to why their challenge to the class action waiver does not raise a question of arbitrability stems from the fact that they are amenable to arbitration in the abstract. That is, although the Púleos oppose the enforcement of the express terms of their Arbitration Agreement — which makes clear that arbitration is to occur on an individual basis only, and that “the arbitrator shall have no authority to proceed” on a class or representative basis, (App.63) — they do not oppose having their contractually proscribed class claims sent to arbitration for the arbitrator to rule on the unconscionability of the class action waiver. Because they oppose the enforcement of the terms of their own Arbitration Agreement, but not the requirement of arbitration in general, the Púleos argue that their challenge to the class action waiver merely presents a question of arbitration procedure, not a gateway question of arbitrability. See Howsam, 537 U.S. at 84, 123 S.Ct. 588 (noting that “procedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide”) (quotation marks and citation omitted).
We do not agree. As an initial matter, under the FAA, a district court does not issue an order compelling arbitration in the abstract. Rather, as the Supreme Court has recognized, § 4 of the FAA “confers only the right to obtain an order directing that ‘arbitration proceed in the manner provided for in [the parties’] agreement.’ ” Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ., 489 U.S. 468, 475, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (quoting 9 U.S.C. § 4) (alterations in original). In other words, in the absence of a threshold question regarding the validity of the arbitration agreement itself or the applicability of an arbitration agreement to a given dispute, the FAA “requires courts to enforce privately negotiated agreements to arbitrate ... in accordance with their terms.”[5] Id. at 478, 109 S.Ct. 1248 (emphasis added); cf. Allstate Settlement Corp. v. Rapid Settlements, Ltd., 559 F.3d *182 164, 169 (3d Cir.2009) (“Arbitration is fundamentally a creature of contract, and an arbitrator’s authority is derived from an agreement to arbitrate.”) (quotation marks and citation omitted). The terms of the parties’ Arbitration Agreement are clear— the Agreement makes plain that an arbitrator has “no authority to proceed” over a class arbitration. (App.62-63.) Enforcing the Agreement “in accordance with [its] terms” means granting precisely the relief that Chase requested before the District Court — an order compelling the parties to arbitrate their claims on an individual basis. Volt, 489 U.S. at 478, 109 S.Ct. 1248; see also Livingston v. Assocs. Fin., Inc., 339 F.3d 553, 559 (7th Cir.2003) (“The Arbitration Agreement at issue here explicitly precludes the Livingstons from bringing class claims or pursuing class action arbitration, so we are therefore obliged to enforce the type of arbitration to which these parties agreed, which does not include arbitration on a class basis.”) (quotation marks and citations omitted). Under the FAA and the terms of the Arbitration Agreement, then, the District Court could not have compelled class arbitration without first addressing whether the class action waiver was unconscionable.
The Púleos’ argument regarding their class claims is self-contradictory. In order to present their class claims to an arbitrator, the Púleos needed to obtain a court order that invalidated the Arbitration Agreement’s class action waiver and that compelled class arbitration. This is because unless it addressed the validity of the ban on class arbitration, the District Court could not have ordered the parties to submit their dispute to class arbitration without running afoul of the FAA’s directive that arbitration agreements be enforced in accordance with their terms. See 9 U.S.C. § 4; see also Volt, 489 U.S. at 478, 109 S.Ct. 1248. And without a court order compelling class arbitration, the Púleos could not have presented their class claims to the arbitrator — the rules of the American Arbitration Association (“AAA”) make plain that where, as here, a contract bans class arbitration, the AAA will not hear class claims “unless an order of a court directs the parties to the underlying dispute to submit any aspect of their dispute involving class claims, consolidation, joinder or the enforceability of such provisions, to an arbitrator.” (App.108.) By arguing that the District Court should have compelled class arbitration without addressing the validity of the express contractual ban on class arbitration, the Púleos would have us ignore the plain language of both 9 U.S.C. § 4 and their own Arbitration Agreement.[6] We decline to indulge the Púleos’ desire to have it both ways — i.e., to have the District Court compel the parties to arbitrate class claims without first addressing the validity of the class action waiver.
Moreover, notwithstanding the fact that they are amenable to arbitration in the abstract, by challenging the enforceability of the class action waiver, the Púleos are necessarily challenging the validity of the agreement to arbitrate. The provision targeted by the Púleos goes to the heart of the arbitrator’s authority to hear claims arising under the Cardmember Agreement, in that it provides unambiguously that “the arbitrator shall have no *183 authority to proceed ” on a class or representative basis. (App. 63 (emphasis added).) A challenge to this provision, which designates a clear boundary of arbitral authority, is a far cry from procedural questions over “whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met,” which are matters for the arbitrator. Howsam, 537 U.S. at 85, 123 S.Ct. 588 (citation and emphasis omitted). An arbitrator can resolve these latter procedural issues, as well as the merits of the underlying dispute, without deciding the existence and scope of his or her own jurisdiction, which arbitrators are neither well-suited, nor generally permitted, to assess. See, e.g., Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 111 (3d Cir.2000) (“[A]llow[ing] the arbitrators to determine their own jurisdiction is not permitted in the federal jurisprudence of arbitration, for the question whether a dispute is to be arbitrated belongs to the courts unless the parties agree otherwise.”) (citing First Options, 514 U.S. at 944, 115 S.Ct. 1920). The same cannot be said for the class arbitration ban — under the express terms of the Arbitration Agreement, a challenge to this provision necessarily calls into question the very authority of the arbitrator to preside over the dispute, and, by extension, the validity of the Agreement itself.[7] This is a question of arbitrability for the court to resolve, irrespective of the Púleos’ amenability to arbitration in the abstract.
In explaining the types of issues that present questions of arbitrability, the Supreme Court has emphasized the significance of the parties’ reasonable expectations. As the Court discussed in Howsam, the term “question of arbitrability” is “applicable in the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate.” Howsam, 537 U.S. at 83-84, 123 S.Ct. 588 (emphasis added). Given the Arbitration Agreement’s provision expressly restricting the arbitrator’s authority to preside over a class arbitration, we think it obvious that the “contracting parties would likely have expected a court” to decide whether that very provision is unconscionable. Id.
In concluding that the Púleos’ challenge to the class action waiver is a challenge to the validity of the Arbitration Agreement, we concur with the Court of Appeals for the Second Circuit, which recently addressed a largely identical appeal. In the case of In re Am. Express Merchs.’ Litig., 554 F.3d 300 (2d Cir.2009), the Second Circuit considered the enforceability of an arbitration provision barring class actions within a very similar cardmember agreement. The court addressed the same question now before us — whether the court or arbitrator should pass judgment on the enforceability of an explicit class action waiver. In that case, as in ours, the plaintiffs were “amenable to proceeding to arbitration,” id. at 321, although they sought to arbitrate on a class-wide basis. The district court in that case agreed with the position advocated by the Púleos; it re *184 ferred the decision concerning the enforceability of the class action waiver to the arbitrator, holding that “enforceability of the collective action waivers is a claim for the arbitrator to resolve. Issues relating to the enforceability of the contract and its specific provisions are for the arbitrator, once arbitrability is established.” In re Am. Express Merchs.’ Litig., No. 03-CV9592, 2006 WL 662341, at *6 (S.D.N.Y. Mar.16, 2006). The Second Circuit, however, soundly rejected the decision of the district court, noting that a challenge to the explicit class action bar was, in essence, a challenge to the agreement to arbitrate:
The plaintiffs are plainly challenging the Card
Acceptance Agreement’s arbitration clause insofar as they dispute the enforceability of its class action waiver and, by extension, the validity of the parties’ agreement to arbitrate. Their challenge is to the arbitration clause itself, rather than to the entirety of the Card Acceptance Agreement. This appeal therefore involves a gateway dispute about whether the parties are bound by a given arbitration clause, a dispute which raises a question of [arbitrability] for a court to decide.
In re Am. Express Merchs.’ Litig., 554 F.3d at 311 (internal quotation marks and citations omitted). We agree with the Second Circuit that a challenge to the enforceability of an explicit class action waiver within an arbitration agreement is a challenge to the validity of the parties’ agreement to arbitrate, and thus a question for the court to decide.
2.
Contrary to the Púleos’ contentions, the Supreme Court’s plurality opinion in Bazzle does not compel a contrary conclusion. The Púleos rely upon Bazzle in arguing that a party’s “stand-alone challenge to [a] class action waiver does not raise an issue of arbitrability” because it is merely a procedural matter for the arbitrator to decide. (Appellants’ Br. at 20.) But Bazzle does not stand for the broad proposition for which the Púleos cite it. In Bazzle, the Supreme Court confronted “a problem concerning the contracts’ silence. Are the contracts in fact silent, or do they forbid class arbitration ... ?” 539 U.S. at 447, 123 S.Ct. 2402. The Court explained that this matter of contract interpretation in the face of contractual silence was for the arbitrator. Id. at 451, 123 S.Ct. 2402. As the Bazzle plurality concluded, “the question — whether the agreement forbids class arbitration — is for the arbitrator to decide.” Id.
The dispute in Bazzle, therefore, did not present a question relating to the validity of the arbitration agreement — it was a dispute about what the contract actually said. Here, by contrast, there is no doubt over “what kind of arbitration proceeding the parties agreed to.” Id. at 452, 123 S.Ct. 2402 (noting that a dispute over the “kind of arbitration proceeding” agreed to could properly be decided by an arbitrator, but a dispute over the validity of an arbitration clause or its applicability to an underlying dispute was not a proper question for the arbitrator) (emphasis omitted). The question Bazzle confronted is thus inapplicable to agreements like the one at issue herein, which expressly and unmistakably proscribes class arbitration and which leaves no question as to “whether the agreement forbids class arbitration.” Bazzle, 539 U.S. at 451, 123 S.Ct. 2402; see, e.g., Kristian v. Comcast Corp., 446 F.3d 25, 54 (1st Cir.2006) (“Bazzle does not apply here because of the clarity of the prohibition against class arbitration.”); In re Am. Express Merchs.’ Litig., 554 F.3d at 311 n. 10 (same).
*185 Moreover, Bazzle certainly did not hold that an unconscionability challenge to a class action waiver provision in an arbitration agreement is a matter for the arbitrator, not the court, to decide. The issue in Bazzle was the existence, not the validity, of a class action waiver, see Kristian, 446 F.3d at 54, and, post-Bazzle, courts have consistently treated challenges to the enforceability of class action waivers as matters for judicial, not arbitral, resolution. See, e.g., Homa, 558 F.3d at 233; In re Am. Express Merchs.’ Litig., 554 F.3d at 311-12; Gay v. CreditInform, 511 F.3d 369, 394-95 (3d Cir.2007); Kristian, 446 F.3d at 54; Iberia Credit Bureau, Inc. v. Cingular Wireless LLC, 379 F.3d 159, 174-75 (5th Cir.2004). We therefore conclude that the Púleos’ reliance upon Bazzle is misplaced.
3.
Nor can we agree with the Púleos’ contention that because the parties’ Arbitration Agreement contains a severability clause, the District Court erred in considering the unconscionability of the class action waiver. The severability clause provides that “if any portion of this Arbitration Agreement is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force.” (App.63.) Relying on this provision, the Púleos argue that the District Court, faced with their contention that the class action waiver was unconscionable, should have ignored the question of unconscionability and instead directed its attention to the question of whether the class action waiver, if found unconscionable, could ultimately be severed from the remainder of the Arbitration Agreement. Had the District Court done so, say the Púleos, it would have concluded that their unconscionability challenge to the class action waiver does not call the validity of the Arbitration Agreement as a whole into question, because whether or not the waiver is unconscionable, it would not impact the requirement of arbitration.
Once again, however, the plain language of the parties’ Arbitration Agreement undermines the force of the Púleos’ argument. The severability clause upon which the Púleos rely is phrased in the conditional: “if any portion of this Arbitration Agreement is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force.” (App. 63 (emphasis added).) The clause thus provides for a two-step analysis — first, assess whether any provision of the Arbitration Agreement is unenforceable, and if so, then assess the severability of the unenforceable provision. The District Court followed precisely this order of analysis in addressing the Púleos’ challenge to the class action waiver, and, given the express language of the parties’ Agreement, it can hardly be faulted for having done so. Because it held, at the first step of the analysis, that the waiver provision was not unconscionable, the District Court did not reach (and indeed, should not have reached) the secondary issue of severability. As the Court of Appeals for the Second Circuit explained when confronted by a litigant’s effort to invoke a severability clause under comparable circumstances:
The severability clause ... has no relevance to this appeal. According to its terms, the severability clause applies “[i]n the event that any provision of this Agreement, or the application of such provision shall be held by a court of competent jurisdiction to be contrary to law....” The district court, however, did not hold any provision of the arbitration agreement to be contrary to law----Thus, the district court did not trigger any application of the severability clause and, as a result, the question of whether or not the clause can “save” the *186 arbitration agreement is not properly raised on this appeal.
Ragone, 595 F.3d at 123.
This analysis is in accord with the approach to the issue of severability that we have consistently adopted when addressing unconscionability challenges to arbitration agreements. That is, when confronted by a litigant’s claim that a provision of an arbitration agreement is unconscionable, we have always considered, first, whether the provision is in fact unenforceable, and, if so (and only if so), whether the unenforceable provision may be severed from the remainder of the arbitration agreement. See, e.g., Parilla, 368 F.3d at 276 (“We set forth below the relevant principles of unconscionability and will apply those principles to the arbitration terms at issue in this case. We will then determine whether it is appropriate to sever any unenforceable provisions from the parties’ agreement to arbitrate.”) (emphasis added); Alexander, 341 F.3d at 270 (applying unconscionability first, severability second order of analysis); Spinetti, 324 F.3d at 221-22 (same); cf. Delta Funding Corp. v. Harris, 426 F.3d 671, 675 (3d Cir.2005) (“Is the arbitration agreement at issue in this case, or any provision thereof, unconscionable under New Jersey law, and if so, should such provision or provisions be severed.”) (citation omitted, emphasis added). Other Circuits employ this same two-step order of analysis, contrary to the Púleos’ contention that we should put the sever-ability cart before the unconscionability horse. See, e.g., In re Cotton Yarn Antitrust Litig., 505 F.3d 274, 292 (4th Cir.2007); Hadnot v. Bay, Ltd., 344 F.3d 474, 478 (5th Cir.2003); Gannon v. Circuit City Stores, Inc., 262 F.3d 677, 683 (8th Cir.2001). The two-step nature of this inquiry — unconscionability first, severability second — is likewise implicit in the language of the Restatement (Second) of Contracts, which explains severability as an “if/then” concept. See Restatement (Second) of Contracts § 184(1) (“If less than all of an agreement is unenforceable under the rule stated in § 178, a court may nevertheless enforce the rest of the agreement in favor of a party who did not engage in serious misconduct if the performance as to which the agreement is unenforceable is not an essential part of the agreed exchange.”) (emphasis added).
The Púleos’ suggestion that a court intrudes upon the province of the arbitrator any time it addresses the unconscionability of a provision of an arbitration clause that it subsequently finds is severable from the agreement runs contrary to our precedent and that of our sister circuits. In Spinetti, for example, we found two terms of an arbitration agreement unconscionable, but determined that the unenforceable terms could be severed from the remainder of the contract. 324 F.3d at 219-20; accord Scovill v. WSYX/ABC, 425 F.3d 1012, 1017 (6th Cir.2005) (finding provision of arbitration agreement unconscionable and then severing unconscionable term pursuant to severability clause); Hadnot, 344 F.3d at 478 (same); Gannon, 262 F.3d at 680-81 (same). The Púleos would apparently have us hold that in each of these cases, the court overstepped its bounds by addressing the issue of unconscionability in the first instance, since in each case, the provisions in question, whether or not unconscionable, were ultimately severable from an otherwise enforceable arbitration agreement. We see no basis in our cases, nor in the Supreme Court’s arbitration jurisprudence, for such a holding. Particularly in light of the conditional language of the severability clause in the parties’ Arbitration Agreement, we disagree with the Púleos’ suggestion that the District Court erred in considering their unconseionability argument before addressing the severability of the class action waiver.
*187 4.
Finally, the Púleos argue that even if their unconscionability challenge to the class action waiver presented a question of arbitrability, the parties intended to present such questions to the arbitrator, not the court. As we have noted, under the Supreme Court’s arbitration jurisprudence, while the general rule is that questions of arbitrability are for the court to resolve, parties can contract around this rule if they desire to arbitrate arbitrability. See First Options, 514 U.S. at 944-45, 115 S.Ct. 1920. The Supreme Court has made clear, however, that courts “should not assume that the parties agreed to arbitrate arbitrability unless there is ‘clea[r] and unmistakable]’ evidence that they did so.” Id. at 944, 115 S.Ct. 1920 (quoting AT & T Techs., 475 U.S. at 649, 106 S.Ct. 1415) (alterations in original). As First Options explains, “given the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the ‘who should decide arbitrability’ point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide.” Id. at 945, 115 S.Ct. 1920 (citation omitted). We have described the burden on a litigant seeking to prove that the parties intended for the arbitrator to decide questions of arbitrability as “onerous.” Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 221 (3d Cir.2007).
We agree with Chase that the Púleos have not< met this burden. The provision of the Arbitration Agreement upon which the Púleos rely states that “[c]laims subject to this Arbitration Agreement include Claims regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember Agreement or any prior Cardmember Agreement,” and it further states that “the term ‘Claim’ is to be given the broadest possible meaning.” (App.63.) The first set of claims described in this provision — claims “regarding the applicability of this Arbitration Agreement,” (App. 63) (emphasis added) — are certainly not at issue in this dispute. Claims regarding “whether an arbitration clause in a concededly binding contract applies to a particular type of controversy” are indeed questions of arbitrability.[8] See Howsam, 537 U.S. at 84, 123 S.Ct. 588. Under the terms of the parties’ contract, if any party in this case actually questioned whether the Púleos’ complaint about Chase’s retroactive interest rate increases fell within the scope of the Arbitration Agreement, such a question would be for the arbitrator. But there is no question in this case concerning the scope or applicability of the Arbitration Agreement. That is, Chase and the Púleos agree that the Púleos’ complaint about the retroactive interest rate increase falls within the scope of the Arbitration Agreement; they disagree only about whether the class action waiver provision of the Arbitration Agreement is valid. Because there is no dispute in this case “regarding the applicability of this Arbitration Agreement” to the substantive dispute between the parties, *188 (App.63), the first clause of the provision relied upon by the Púleos does not “clearly and unmistakably” show that the parties intended to arbitrate the validity of the class action waiver. Howsam, 537 U.S. at 83, 123 S.Ct. 588 (citation omitted); see also Ehleiter, 482 F.3d at 215, 222.
Nor is there a dispute between Chase and the Púleos concerning “the validity of the entire Cardmember Agreement or any prior Cardmember Agreement.” (App.63.) Arbitration jurisprudence distinguishes between a “challenge ... to the arbitration clause itself,” and a challenge targeting the contract as a whole. Buckeye, 546 U.S. at 445-46, 126 S.Ct. 1204; see also Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). The parties’ Arbitration Agreement makes clear that the latter category of challenges — disputes concerning “the validity of the entire Cardmember Agreement,” (App.63) — are for the arbitrator. The Arbitration Agreement is silent, however, with regard to who decides challenges “to the arbitration clause itself,” Buckeye, 546 U.S. at 446, 126 S.Ct. 1204, and the Supreme Court has made clear that “silence or ambiguity on the ‘who should decide arbitrability’ point” must be resolved in favor of judicial resolution of questions of arbitrability. First Options, 514 U.S. at 945, 115 S.Ct. 1920. The Púleos do not contest “the validity of the entire Cardmember Agreement,” (App.63), by, e.g., alleging that the entire contract is illegal and void. See Buckeye, 546 U.S. at 446, 126 S.Ct. 1204. Instead, they challenge “the validity of arbitration provisions within a larger contract, apart from the validity of the contract as a whole,” a matter which the Arbitration Agreement cannot be read to refer to the arbitrator. Jackson, 581 F.3d at 915. In sum, the Púleos have failed to adduce clear and unmistakable evidence that the parties intended to arbitrate questions concerning the validity of the arbitration agreement, which is fatal to their argument that the District Court should have referred such a question of arbitrability to the arbitrator. See First Options, 514 U.S. at 945, 115 S.Ct. 1920.
IV.
For the foregoing reasons, we conclude that the Púleos’ challenge to the Arbitration Agreement’s class action waiver presents a question of arbitrability that the District Court appropriately addressed. We will therefore affirm the District Court’s order compelling the parties to arbitrate their claims on an individual basis.

. We note that the Púleos could not have commenced this matter as a class arbitration before the American Arbitration Association ("AAA”). According to a policy announced in *177 July 2005, the AAA does not accept demands for class arbitration where, as here, "the underlying agreement prohibits class claims,” unless the parties obtain a court order requiring the parties to submit class claims to arbitration. (App.108.) In other words, in order to pursue this matter as a class arbitration, the Púleos first had to commence the proceedings in court in order to obtain an order mandating the submission of class claims to arbitration.

. The District Court also upheld the validity of the class action waiver, relying upon Gay v. CreditInform, 511 F.3d 369, 394-95 (3d Cir.2007), and rejecting the Púleos’ argument that the class ban was unconscionable. The Púleos do not appeal this aspect of the District Court’s Opinion. The only question before us, therefore, is who decides whether or not the class action waiver is unconscionable. We do not address the District Court’s substantive determination that the class action waiver is not unconscionable.
However, we are mindful of the possible tension between Gay and our subsequent opinion in Homa v. Am. Express Co., 558 F.3d 225 (3d Cir.2009). In Gay, we explained that certain Pennsylvania cases finding that class action waivers are unconscionable were preempted by the FAA. See Gay, 511 F.3d at 395. In Homa, we explained that Gay's discussion of preemption "appears to be dicta,” and held that New Jersey cases concerning the unconscionability of class action waivers were not preempted by the FAA. See Homa, 558 F.3d at 229-30. While perhaps dicta itself, it is worth noting our agreement that Gay’s discussion of Pennsylvania law was indeed dicta, since our holding in Gay was that Virginia law governed the parties’ arbitration agreement. Gay, 511 F.3d at 390. In any event, the New Jersey case law at issue in Homa did not evince hostility toward arbitration clauses, which was the concern about Pennsylvania law expressed in Gay. Compare Homa, 558 F.3d at 230 with Gay, 511 F.3d at 394-95.

. Our dissenting colleagues appear to suggest that an unconscionability challenge to “a single provision of an arbitration agreement” does not necessarily raise a question of arbitrability. Dissenting Op. at p. 194 (emphasis in original). As recently as last year, we recognized that an unconscionability challenge to a single provision of an arbitration agreement — also a class action waiver provision — does in fact present a question of arbitrability. See Homa v. Am. Express Co., 558 F.3d 225, 226 (3d Cir.2009); see also In re Am. Express Merchs.’ Litig., 554 F.3d 300 (2d Cir.2009) (addressing the alleged unconscionability of a single provision).

. An attack on the validity of the contract as a whole, as opposed to the arbitration clause in particular, does not present a question of arbitrability. See Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445-46, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006) ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.”). In Buckeye, for example, where the plaintiffs alleged that the contract as a whole was illegal on account of its imposition of usurious interest rates, the issue was one for the arbitrator, not the court. As the Supreme Court explained in that case, "because respondents challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract.” Id. at 446, 126 S.Ct. 1204. "The flip side of this rule, however, is that when a party specifically challenges the validity of arbitration provisions within a larger contract, apart from the validity of the contract as a whole, a court decides the threshold question of the enforceability of the arbitration provisions.” Jackson v. Rent-A-Center West, Inc., 581 F.3d 912, 915 (9th Cir.2009).

. The Supreme Court recently reemphasized this point in Stolt-Nielsen S.A. v. AnimalFeeds Int’l Corp., in which the Court stated that “the central or primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms.” - U.S. -, 130 S.Ct. 1758, 1773, - L.Ed.2d - (2010) (quotation marks and citation omitted).

. Like the Púleos, the dissent overlooks the significance of the parties' Arbitration Agreement and the statutory text of § 4 of the FAA. The Púleos manifestly are not “willing to proceed to arbitration according to the concrete terms of their arbitration agreement.” Dissenting Op. at p. 189. The District Court could not both order class arbitration and compel arbitration “in the manner provided for in [the parties’] agreement,” without considering whether the class arbitration waiver is unconscionable. 9 U.S.C. § 4.

. The dissent’s suggestion that the class arbitration waiver is not intertwined with the arbitrator’s jurisdiction is incorrect. The Agreement clearly states that the arbitrator "shall have no authority to proceed” over a class arbitration, and the parties are bound by that language. See Allstate, 559 F.3d at 169 ("Arbitration is fundamentally a creature of contract[.]”) (citation omitted).

. The Supreme Court set forth examples of claims challenging the applicability of an arbitration clause in Howsam — a dispute regarding "whether a labor-management layoff controversy falls within the arbitration clause of a collective-bargaining agreement” is a question concerning the applicability of an arbitration agreement, as is a disagreement over "whether a clause providing for arbitration of various 'grievances' covers claims for damages for breach of a no-strike agreement.” Howsam, 537 U.S. at 84, 123 S.Ct. 588 (citations omitted). No such question of applicability is presented in this case.