NOT PRECEDENTIAL

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

No. 16-3960

---

SHEILA HORTON, Individually and
on behalf of all others similarly situated

v.

FEDCHOICE FEDERAL CREDIT UNION;
DOES 1 THROUGH 10

Fedchoice Federal Credit Union,
                                    Appellant

---

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No.: 2-16-cv-00318)
District Judge:  Honorable J. William Ditter, Jr.

---

Submitted under Third Circuit L.A.R. 34.1(a)
on April 25, 2017

Before:  SMITH, Chief Judge, MCKEE and RENDELL Circuit Judges

(Opinion filed: May 2, 2017)

OPINION*

RENDELL, Circuit Judge:

Appellant FedChoice appeals from an Order of the District Court denying its motion to stay or dismiss Appellee Horton's Complaint in favor of binding arbitration. We will affirm.

I.

Sheila Horton sued FedChoice Federal Credit Union individually and on behalf of those similarly situated claiming that FedChoice's overdraft protection program, Courtesy Pay, breached the terms of her Account Agreement and violated certain other federal laws.[1] Under the terms of Courtesy Pay, FedChoice agrees to pay debits to an account holder's checking account even if the checking account would become overdrawn by the transaction. Upon paying the debit, FedChoice in turn charges the account holder a fee. Account holders must affirmatively opt in to Courtesy Pay.

At the center of the dispute is FedChoice's formula for calculating whether there are sufficient funds in the checking account to cover a given transaction. Rather than using an account holder's "actual balance" to make this determination, FedChoice looks to an account holder's "available balance"—the "actual balance" minus anticipated debits

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.
[1] In particular, she claims that FedChoice's practices violated the Electronic Fund Transfer Act, 15 U.S.C. § 1693, and Regulation E, 12 C.F.R. § 1005.17 (2016).

which may or may not post to the account later on. J21a–J22a. Horton alleges that use of this "artificial internal calculation" results in frequent overdraft fees in situations where there is actually money in the account and is contrary to the Account Agreement, Opt-In Agreement, and other marketing materials.[2] J21a. Horton's Account Agreement was attached to the Complaint, but does not contain an arbitration provision. Horton's Opt-in Agreement does not appear in the record beyond being mentioned in the Complaint.

In response to the Complaint, FedChoice moved to stay or dismiss the Complaint in favor of binding arbitration (the "Motion"). In support of that Motion, it filed the declaration of FedChoice employee Phyllis Mauck, who confirmed that Horton had a checking account at FedChoice and had opted into Courtesy Pay via an online Opt-In Agreement in 2004. Mauck also stated that Horton had entered into a third contract, called a Service Agreement in 2015. The Service Agreement contains terms governing "Account-to-Account linking," which allows FedChoice account holders to transfer money electronically between their accounts at FedChoice and other financial institutions. J53a. The Service Agreement also contains an arbitration provision that states: "You agree that any dispute between us, including any dispute concerning your accounts, the Service, and these Terms and Condition [sic] be resolved by binding arbitration." J64a. Attached to the Mauck Declaration, in addition to the Service Agreement itself, are a computer print-out that purports to show that Horton accepted the

---

[2] The Account Agreement, in particular, provides that FedChoice will charge an overdraft fee when "the funds in [the account holder's] share account are not sufficient to cover drafts, fees or other items posted to [the] account." J20a.

3

Service Agreement using FedChoice's website, and screenshots of the website where the terms of the Service Agreement supposedly appeared to the online user.

Horton opposed FedChoice's Motion, and, in support, filed a declaration of her own. She averred that she "ha[d] no recollection of seeing the screenshots of this [S]ervice [A]greement, reading this [S]ervice [A]greement, reading any arbitration provision, and agreeing to the terms of this agreement." J134a. She did not believe that she had ever used Account-to-Account linking to transfer funds between her accounts either.

The District Court denied FedChoice's Motion to compel arbitration. In relevant part, after characterizing the Service Agreement as a "contract of adhesion" that "invite[s] an inquiry into whether [it is] procedurally and substantively unconscionable," the District Court "conclude[d] that the validity of the Service Agreement is a disputed issue." J7a–8a. "It follow[ed]," the District Court continued, "that the parties are entitled to discovery on the question of arbitrability." J8a (citing *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764 (3d Cir. 2013)). The District Court then entered an Order denying FedChoice's Motion, permitting discovery on the "issue of arbitrability," and stating that, after discovery, it would entertain a "renewed motion to compel arbitration, if necessary." J5a.

FedChoice then appealed.

4

II.[3]

"[Q]uestions of arbitrability, including challenges to an arbitration agreement's validity, are presumed to be questions for judicial determination." *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 228 (3d Cir. 2012). We exercise plenary review over such questions. *See Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 177 (3d Cir. 2010) (en banc).

When faced with a motion to compel arbitration, we must first determine which standard to apply to the motion. *See Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir. 2013). If it is "apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Id.* (internal quotation marks omitted). "But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, *or* if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue," then we apply Rule 56's summary judgment procedures. *Id.* (emphasis added). Under either scenario, "the non-movant must be given the opportunity to conduct limited discovery on the narrow issue concerning the validity of the arbitration agreement." *Id.* at 774 (internal quotation marks omitted).

---

[3] The District Court had subject matter jurisdiction under 28 U.S.C. §§ 1331, 1367. We have appellate jurisdiction over FedChoice's interlocutory appeal pursuant to 9 U.S.C. §16(a). *See Guidotti*, 716 F.3d at 771 n.3.

Before we turn to this issue, we address some of FedChoice's arguments on appeal that the District Court exceeded its authority in denying its Motion. First, FedChoice argues that because questions over the validity of the entire contract are for the arbitrator, *see S. Jersey Sanitation Co. v. Applied Underwriters Captive Risk Assurance Co.*, 840 F.3d 138, 143 (3d Cir. 2016), the District Court "usurped the role of the arbitrator" when it stated that "the validity of the Service Agreement is a disputed issue," FedChoice Br. 10–11 (citing J8a). Second, FedChoice contends that the District Court should have ordered arbitration because the arbitration provision in the Service Agreement "expressly delegates" the question of arbitrability to the arbitrator. FedChoice Br. 13 (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986)).

These arguments, however, misconstrue the District Court's Order. The District Court did not hold that the entire Service Agreement was unconscionable (although it did express that it was a "disputed issue" and, therefore, that it might be). It did not take a position on whether the Service Agreement's language reserves the question of arbitrability to the arbitrator either. The District Court merely declined to compel arbitration based on the pleadings alone, instead choosing to permit limited discovery on "the issue of arbitrability" before entertaining a "renewed motion to compel arbitration," as the text of its Order makes clear.[4] J5a. The only question before us, therefore, is

---

[4] We note that the District Court did not explicitly cite Rule 12(b)(6) or Rule 56. But we think it clear from its citation to *Guidotti* that the District Court treated the Motion as having been brought under Rule 12(b)(6) and denied it in favor of applying Rule 56 procedures after discovery.

6

whether the District Court erred by declining to compel arbitration on the pleadings under *Guidotti*. We conclude that it did not.

*Guidotti* provides two pathways to reach summary judgment on the issue of arbitrability: either the parties' agreement to arbitrate the dispute is not clear on the face of the complaint (or incorporated documents), or the non-movant comes forward with additional facts that put an otherwise facially-apparent agreement to arbitrate at issue. Here, we find that the Motion should be considered under summary judgment procedures per the first pathway. It is not "apparent" on the face of the Complaint that Horton's contract claim alleging breach of Courtesy Pay's terms in the Account Agreement is subject to arbitration. While the Complaint explicitly mentions and incorporates the Account Agreement, that document does not contain any agreement to arbitrate. The Complaint also implicates the 2004 Opt-in Agreement, but it is not in the record. At this stage, we presume that it does not contain an arbitration provision either.

Conversely, the Service Agreement, which Horton allegedly entered into eleven years after she opted in to Courtesy Pay, is not attached to or referenced in her Complaint. The Service Agreement is not specifically implicated by the pleadings either because the Service Agreement does not involve the Courtesy Pay policies at issue in this case; it provides the general terms of FedChoice's fund transfer service. *Cf. CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 168 n.2 (3d Cir. 2014) (analyzing whether, and ultimately applying motion to dismiss standard where, contracts "not appended to the [c]omplaint" were "integral to, and referenced in, the [c]omplaint."). Under *Guidotti*'s first pathway, therefore, "the affirmative defense of arbitrability of [Horton's] claims is

7

[not] apparent on the face of [the] complaint," making application of Rule 12(b)(6) inappropriate in this case. *Guidotti*, 716 F.3d at 773–74. In light of this, FedChoice's argument that Horton "did not unequivocally deny accepting the Service Agreement," FedChoice Br. 14, is unavailing because it overlooks that *Guidotti*'s rule-selecting framework is disjunctive. *See id.* at 776 ("But if the complaint . . . [is] unclear . . . , *or* if the plaintiff has responded . . . with additional facts to place the agreement to arbitrate at issue . . . ." (emphasis added)). Summary judgment procedures are appropriate.

On this latter point, we acknowledge that FedChoice has proffered additional evidence, attached to the Mauck Declaration, that purports to show that Horton manifested assent to the Service Agreement, and, thus, the arbitration provision therein. FedChoice also contends that Horton's declaration that she "does not believe" she has ever seen the Service Agreement would be insufficient to survive summary judgment under our case law. *See Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 55 (3d Cir. 1980) ("A naked assertion . . . by a party to a contract that it did not intend to be bound by the terms thereof is insufficient to place in issue the making of the arbitration agreement." (internal quotation marks omitted)). On this evidence, FedChoice urges us to reach the merits of the arbitrability dispute.

We take no position on these arguments. *Guidotti* is unequivocal: if the complaint and incorporated documents are not clear on their face as to an agreement to arbitrate, "the non-movant must be given the opportunity to conduct limited discovery on the narrow issue concerning the validity of the arbitration agreement." *Guidotti*, 716 F.3d at 774; *see also id.* ("Under the first scenario, arbitrability not being apparent on the face of

8

the complaint, the motion to compel arbitration must be denied pending further development of the factual record."). Without the benefit of a developed factual record, we cannot assess whether the authenticity or import of the computer printouts, offered by FedChoice's own employee, are factual matters beyond reasonable dispute. We also note that there are questions remaining under state law as to whether the agreement would be unconscionable or should be read to cover contract disputes over terms that appear in documents that pre-date the Service Agreement. We decline to address the arbitrability dispute at this stage, and leave it for the District Court to do so in the first instance under Rule 56, after discovery on this issue.

III.

Accordingly, we will affirm the Order of the District Court.