NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1963
_____

PETER MANCUSO

v.

MDG USA, INC.,
              Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-22-cv-01405)
District Judge: Honorable Joseph F. Saporito, Jr.
_____

Argued on February 7, 2024

Before: HARDIMAN, SCIRICA, and SMITH, *Circuit Judges*.

(Filed: March 22, 2024)

_____

Gregory Blase [**Argued**]
Andrew C. Glass
K&L Gates
1 Congress Street, Suite 2900
Boston, MA 02114

David R. Fine
K&L Gates
17 N. Second Street, 18th Floor
Harrisburg, PA 17101
          *Counsel for Appellant*

John T. Shaffer, Jr. [**Argued**]
Starks Law
1422 West Street Road, Suite 2
Warminster, PA 18974
 *Counsel for Appellee*

OPINION[*]

_____

**HARDIMAN**, *Circuit Judge*.

MDG USA, Inc. appeals the District Court's order denying its motion to compel arbitration. Because we agree with MDG that Plaintiff Peter Mancuso's claims are subject to an enforceable arbitration clause, we will reverse and remand with instructions to enter an order compelling arbitration.

I

In September 2020, Mancuso bought a laptop from MDG for about $850 to be paid in monthly installments of around $70 as required by a financing agreement. After Mancuso made his monthly payments for over a year, he and MDG disagreed about the remaining account balance. Mancuso instructed his bank to stop payment, and MDG reported him to credit agencies for refusing to pay.

After Mancuso was denied a mortgage because of his delinquent account with MDG, he sued MDG in Pennsylvania state court alleging violations of state and federal fair credit laws. MDG removed the case to federal court and then moved to compel

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

arbitration and dismiss the case because the financing agreement contains an arbitration clause. The arbitration clause covers "any past, present, or future claim, dispute, or controversy . . . relating to or arising out of th[e] Agreement," including statutory claims. App. 19. MDG provided a signed copy of the financing agreement with its motion, as well as a declaration from its General Counsel authenticating the document.

In response, Mancuso acknowledged that he entered into the financing agreement with MDG and that his claims "arise[] from" and "are encompassed by" the agreement. Dist. Ct. Dkt. No. 9, at 2, 8. But he nonetheless argued that the agreement was unenforceable because of fraud and unconscionability.

The District Court denied MDG's motion without prejudice and ordered limited discovery on the arbitrability of Mancuso's claims because the Court concluded that "it [wa]s not apparent on the face of the complaint that [Mancuso's] . . . claims [we]re subject to arbitration." App. 4.

MDG timely appealed. MDG argues the District Court erred by refusing to enforce the arbitration clause and seeks reversal.

II[1]

Mancuso does not dispute the authenticity of MDG's copy of the financing agreement, and he acknowledges that his claims arise from it. Because the "undisputedly

---

[1] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1332, and 9 U.S.C. § 4. We have jurisdiction under 9 U.S.C. § 16. "We exercise plenary review over questions regarding the validity and enforceability of an agreement to arbitrate." *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 177 (3d Cir. 2010).

authentic documents" on which Mancuso's claims are based contain an arbitration provision, we apply the standard from Rule 12(b)(6) of the Federal Rules of Civil Procedure to MDG's motion to compel arbitration. *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (cleaned up). Under this standard, "the question to be answered" is whether Mancuso's complaint and the financing agreement "provide a recognized legal basis for rejecting" enforcement of the arbitration clause. *Id.* at 774 (cleaned up).[2] We look to state contract law to determine whether the arbitration clause is enforceable. *See Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 276 (3d Cir. 2004).

Mancuso alleges that the terms of the financing agreement are fraudulent and unconscionable under Pennsylvania law. But he does not dispute that he formed a valid contract with MDG, so our review is limited to whether the arbitration clause itself—not the rest of the contract—is enforceable. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967). So we cannot address the merits of Mancuso's claims that the financing agreement includes illegal interest rates and cancellation procedures.

---

[2] We acknowledge *Guidotti*'s cautionary guidance as to when limited discovery into arbitrability is appropriate. *Id.* at 774 (noting that in some cases, "a more deliberate pace is required" to allow for limited discovery into arbitrability). But this is not one of those cases. Here, arbitrability is clear based on Mancuso's complaint and the contract proffered by MDG. Further, Mancuso himself does not seek discovery. Mancuso Br. 9 ("More discovery is unnecessary to show" the arbitration clause is unenforceable.). *Guidotti* makes clear that where "arbitrability . . . is apparent on the face of a complaint (or . . . documents relied upon in the complaint)," courts should "resolv[e] a motion to compel arbitration under a motion to dismiss standard *without the inherent delay of discovery*," 716 F.3d at 773–74 (cleaned up) (emphasis added). So we focus our analysis on the enforceability of the arbitration provision itself.

4

As for the arbitration clause, Mancuso asserts it is unenforceable because it was "hidden and minimized." Mancuso Br. 8. But nothing about its appearance is surreptitious: it occupies one-and-a-half out of eight pages of substantive provisions, uses the same font size as surrounding paragraphs, and announces its presence with several lines of uppercase text on a page of mostly lowercase words. *See* 13 Pa. Cons. Stat. § 1201(b)(10) (2008) (headings in capital letters are "conspicuous"). Nor does Mancuso allege he was unaware of the arbitration clause when he signed the financing agreement.

Mancuso next asserts that a paragraph numbering error made the clause confusing. The arbitration clause is in section 35 of the agreement, and it includes internal cross-references that incorrectly identify the arbitration clause as "section 34." *See* App. 19. But this error exists solely within the subparagraphs of the arbitration clause itself, so the only way for Mancuso to have noticed the error was for him to have read the clause. Because section 34 has nothing to do with arbitration—it is a force majeure clause—no reasonable person would be confused as to the existence or terms of the arbitration clause.

Finally, under Pennsylvania law, "a contract or term is unconscionable . . . where there was a lack of meaningful choice in the acceptance of the challenged provision." *Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 119 (Pa. 2007). Mancuso argues that he could not alter the terms of the contract before signing it, so the entire financing agreement, including the arbitration clause, is procedurally unconscionable. But we can consider this argument only as to the arbitration provision, and that was not procedurally unconscionable because it permitted Mancuso to opt out "for all purposes by sending

5

[MDG] an arbitration opt out notice." App. 19. Thus, Mancuso has not raised a colorable legal issue of fraud, unconscionability, or unenforceability of the arbitration clause itself.

\* \* \*

Mancuso's claims are subject to an enforceable arbitration clause in his financing agreement with MDG. We will reverse the District Court's order denying MDG's motion to compel arbitration and remand with instructions for the District Court to enter an order compelling arbitration.